**Motion Granted; Appeal Dismissed and Memorandum Opinion filed January 24, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00944-CV

---

**PHILLIPS PETROLEUM COMPANY N/K/A CONOCOPHILLIPS COMPANY, GPM GAS CORPORATION, PHILLIPS GAS MARKETING COMPANY, PHILLIPS GAS COMPANY, AND GPM GAS TRADING COMPANY, Appellants**

### V.

**ROYCE YARBROUGH, INDIVIDUALLY AND AS REPRESENTATIVE OF THE CLASS OF ALL SIMILARLY SITUATED PERSONS, Appellee**

---

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 99-DCV-107968**

---

## M E M O R A N D U M   O P I N I O N

This is an attempted interlocutory appeal challenging orders in which the trial court denied appellants' "Motion for Partial Summary Judgment on Implied Covenant Claims or, in the Alternative, Motion to Sever the Implied Covenant Claims or, in the Alternative, Motion for Order Clarifying that Plaintiff Yarbrough's Implied Covenant

Claims are not Included in Subclass 2" and issued an "Order Denying Further Proceedings Regarding Res Judicata." We dismiss for want of jurisdiction.

On February 16, 1999, a class action lawsuit was filed by oil and gas royalty owners who leased their property to Phillips Petroleum (now ConocoPhillips) for oil and gas production. The royalty owners allege Phillips underpaid royalties due under the leases through self-dealing transactions. At that time there were three subclasses of royalty owners. Subclasses 1 and 3 were made up of royalty owners whose royalties were to be paid either on an amount realized/proceeds, or market value, basis. Those royalty owners' claims were based on ConocoPhillips' alleged breach of the implied covenant to market. The royalty owners in Subclasses 1 and 3 alleged that ConocoPhillips breached the implied covenant to market the gas, thus reducing the royalty owners' payments.

In 2008, the Texas Supreme Court determined that the royalty owners in Subclasses 1 and 3 failed to meet the predominance requirement to be certified as a class. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 701–02 (Tex. 2008); *see also* Tex. R. Civ. P. 42(b)(3). The court determined that even if it assumed ConocoPhillips owed identical duties to market, the jury would be required to review prices at each individual wellhead. *Bowden*, 247 S.W.3d at 702.

Subclass 2 is comprised of royalty owners whose royalties are calculated under uniform language in Gas Royalty Agreements (GRAs). ConocoPhillips produces natural gas from these leases, transports it, and its affiliate, GPM Gas Corporation, processes liquid products at a processing plant from the natural gas produced from the wells. *Id.* at 703. The liquid products are sold separately from the dry residue gas. *Id.* The GRAs provide that ConocoPhillips, as lessee, shall pay royalty on all gas, other than casinghead gas, produced from the leases and sold or used off premises. *Id.* at 702.

In certifying the subclasses, the supreme court looked to the royalty agreements the parties entered into in the 1940s. *Id.* at 698. The supreme court described the controversy between the royalty owners and ConocoPhillips as follows:

These royalty owners complain that Phillips calculates their royalties based only on the dry residue natural gas production and excludes the liquid components, which are separated from the gas by Phillips' downstream processing. Liquid products of natural gas can include natural gas liquids or Liquid Natural Gas (LNG). Natural gas liquids are heavier hydrocarbons (such as ethane and propane) that are separated from the lighter natural gas (methane). Natural gas liquids are extracted from natural gas at processing plants away from the wellhead. LNG, by contrast, is liquid methane processed by cooling natural gas to approximately –260 degrees Fahrenheit, at which point the gas condenses to a liquid state. This reduces the volume of the gas by a factor of 600 to 1, making it easier to transport and store. Phillips interprets the GRAs to require royalty payments without accounting for the prices received for natural gas liquids or LNG, which GPM processes miles away.

The royalty owners argue Phillips' practice of using only dry residue gas prices to calculate weighted average price, rather than using the prices obtained from selling the gas before the liquid components are removed, constitutes a breach of the GRAs. If sales of natural gas liquids and LNG are included in the weighted average price, the price factor of the royalty formula will be higher as "wet" gas is more valuable than dry residue natural gas. If they are not, the price factor will be lower. The royalty owners contend that the phrase "weighted average price per M.c.f. received by Lessee from all sales of gas" includes the price Phillips receives for sales to third parties of natural gas liquids and LNG. [internal citations omitted]

*Id.* at 703–04.

The supreme court concluded that the pricing provisions of the GRAs are unambiguous and may be construed classwide for royalty owners who executed substantially identical GRAs. There was no claim of breach of the implied covenant to market made by the Subclass 2 royalty owners. *Id.* The court determined, therefore, that Subclass 2 was a properly certified class. *Id.*

On February 26, 2010, appellees filed their eighth amended petition in which they alleged the GRAs contained an implied covenant to market, and added a cause of action for breach of the implied covenant. ConocoPhillips filed an answer in which it requested that the trial court decertify the class because the addition of the breach of implied covenant cause of action caused the class to fail to meet the predominance requirement

under Rule 42. On January 7, 2011, the trial court signed an order denying ConocoPhillips' motion to decertify Subclass 2. No appeal was taken from that order.

On September 15, 2011, ConocoPhillips filed a "Motion for Partial Summary Judgment on Implied Covenant Claims or, in the alternative, Motion to Sever the Implied Covenant Claims or, in the alternative, Motion for Order Clarifying that Plaintiff Yarbrough's Implied Covenant Claims are not Included in Subclass 2." In the motion, ConocoPhillips argues the claims for breach of implied covenants are "untenable" in light of the supreme court's holdings in *Bowden* because "(i) the GRAs unambiguously set an objective criteria about the price to be used for royalty calculation, thereby eliminating the need for an implied covenant, (ii) any implied covenant to market could only pertain to gas product from GRA Wells, and (iii) Yarbrough and the other members of Subclass 2 do not have standing to bring claims for breach of implied covenants with respect to gas sold from non-GRA wells."

On October 7, 2011, the trial court denied ConocoPhillips' motion. On October 21, 2011, the trial court signed an "Order Denying Further Proceedings Regarding Res Judicata." In the order, the court concluded that "res judicata is adequately addressed by the class definition and the representatives of the class and that class 2 as certified and approved by the Supreme Court of Texas fully sets out those individuals and their claims sufficiently to meet the preclusion requirements."

In this interlocutory appeal, ConocoPhillips attempts to appeal the October 7, 2011 and October 21, 2011 orders under section 51.014(a)(3) of the Texas Civil Practice and Remedies Code. Section 51.014(a)(3) allows a party to appeal an interlocutory order that certifies or refuses to certify a class action. The October 7 and October 21 orders ConocoPhillips attempts to appeal do not certify or refuse to certify a class action.

ConocoPhillips recognizes that the October 7 and October 21 orders do not certify or refuse to certify a class action, but argues that they are nevertheless appealable because they alter the fundamental nature of the class. In *De Los Santos v. Occidental Chemical Corp.*, 933 S.W.2d 493, 495 (Tex. 1996), the supreme court held that an interlocutory

order that changed a certified class from opt-out to mandatory and created conflict between the class and its counsel altered the fundamental nature of the class and was appealable under the statute. ConocoPhillips contends that by signing the October 7, 2011, and October 21, 2011 orders, the trial court altered "the fundamental nature of the class." ConocoPhillips argues that the supreme court's decision in *De Los Santos* broadened the reach of the interlocutory appeal statute so that an appeal lies from any order that alters the fundamental nature of the class.

In *De Los Santos*, a single plaintiff, Grant, filed suit against OxyChem and others for injuries caused by a butadiene plant's accidental chemical release. Other plaintiffs intervened and the defendants successfully moved the court to certify a mandatory class over the plaintiffs' objections. Grant and others appealed the certification, but a group of over 500 plaintiffs represented by an attorney named Gonzalez did not join in the appeal even though they had initially opposed the certification. While appeals of the certification order were pending, the case was transferred to another court. The new court granted the plaintiffs' motion to reconsider and certified the class as an opt-out class. The Gonzalez plaintiffs and others opted out, and the Grant plaintiffs proceeded to trial.

The jury found the defendants were negligent and grossly negligent, and awarded actual damages. Before proceeding to the punitive damages phase of the trial, the defendants offered to settle for more than $65 million provided that a mandatory class was certified and approved by the trial court. The class counsel, who had previously opposed a mandatory class, accepted and joined the defendants in convincing the court to modify the class by changing it from an opt-out class to a mandatory settlement class. This was done over the objection of the Gonzalez plaintiffs who had rejected class counsel's representation by opting out and not participating in the trial.

The plaintiffs appealed the decision, and the court of appeals dismissed for want of jurisdiction because the court's order changing the size of the class merely modified a certification order and did not qualify under section 51.014(a)(3) as an "order certifying

5

or refusing to certify a class." *De Los Santos v. Occidental Chemical Corp.*, 925 S.W.2d 62, 65 (Tex. App.—Corpus Christi 1996). The supreme court reversed the court of appeals, holding that the interlocutory order at issue in *De Los Santos* did more than simply change the size of the class: "[c]hanging a class from opt-out to mandatory does not simply enlarge its membership; it alters the fundamental nature of the class." 933 S.W.2d at 495. In reaching its decision the court voiced concern about conflicts that may arise between the class and its counsel, particularly with regard to settlement. The court noted that "[t]o deny interlocutory appeal in this situation, when class counsel agrees to a fundamental restructuring of the class to which they were once opposed, aggravates those concerns." *Id.*

In *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001), the court described its ruling in *De Los Santos*, as a "narrow ruling" that "comports with the Legislature's intent that section 51.014 be strictly construed as a 'narrow exception to the general rule that only final judgments and orders are appealable.'" *Id.*

ConocoPhillips argues that the trial court's orders on October 7, 2011, and October 21, 2011, had the effect of certifying a new class action to prosecute an implied covenant claim. For that reason, ConocoPhillips argues this court has jurisdiction under section 51.014 to consider its interlocutory appeal.

In its motion for summary judgment, motion to sever, or motion for order clarifying that implied covenant claims are not included in Subclass 2, ConocoPhillips asked the trial court to (1) hold as a matter of law that appellees take nothing on their implied covenant cause of action, (2) sever the implied covenant claims into a separate lawsuit, or (3) clarify that the implied covenant claims are not included in Subclass 2. In the October 7, 2011 order, the trial court denied ConocoPhillips' motion. In the order signed October 21, 2011, the trial court concluded that "res judicata is adequately addressed by the class definition and the representatives of the class and that class 2 as certified and approved by the Supreme Court of Texas fully sets out those individuals and their claims sufficiently to meet the preclusion requirements."

6

The jurisdictional issue in this case is whether the trial court's October 7 and October 21 orders denying ConocoPhillips' motions amount to orders that "certify or refuse to certify a class."

In addition to orders granting or denying class certification, only two other types of orders in class actions have been held to have the effect of certifying or refusing to certify a class so as to permit an interlocutory appeal.

The first application of section 51.014(a)(3) to an order that did not expressly certify or refuse to certify a class recognized that a withdrawal of certification has the same practical effect as a refusal to certify and, thus, is an appealable interlocutory order. *Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366, 368 (Tex. App.—Houston [14th Dist.] 1987, no writ); *see also Wood v. Victoria Bank & Trust Co.*, 69 S.W.3d 235, 238 (Tex. App.—Corpus Christi 2001, no pet.) (interpreting *De Los Santos* in holding that an order that decertifies a class is an order that certifies or refuses to certify a class for purposes of section 51.014(a)(3) because it alters the fundamental nature of the class.). *Grant* acknowledged the appealability of a decertification order, in part, because a more narrow interpretation of section 51.014(a)(3) would give trial courts the power to circumvent appellate review by first granting, then withdrawing, class certification. *Grant*, 725 S.W.2d at 368–69.

The second type of order is illustrated by *De Los Santos*, in which the supreme court recognized that an order changing the characterization of a class from opt-out to mandatory fundamentally alters the nature of the class and therefore is immediately appealable. *De Los Santos*, 933 S.W.2d at 495.

On the opposite end of the jurisdictional spectrum, Rule 42(c) gives trial courts discretion to alter or amend a certification decision at any time before final judgment. Tex. R. Civ. P. 42(c)(1). Thus, a trial court's exercise of its continuing power to alter or amend the nature of an existing certified class by an order increasing its size does not "certify or refuse to certify a class" so as to permit an interlocutory appeal. *Pierce Mortuary Colleges, Inc. v. Bjerke*, 841 S.W.2d 878, 880 (Tex. App.—Dallas 1992, writ

7

denied). Similarly, an order modifying the class definition is not subject to interlocutory appeal under section 51.014(a)(3). *Koch Gathering Sys., Inc. v. Harms*, 946 S.W.2d 453, 456 (Tex. App.—Corpus Christi 1997, writ denied). In other words, an order that merely alters attributes of a class and does not affect the underlying certification of the action as a class action is not appealable under article 51.014(a)(3).

ConocoPhillips asks us to extend the supreme court's rationale in *De Los Santos* to encompass interlocutory orders that deny a motion for partial summary judgment, severance, clarification, or "further proceedings regarding res judicata." ConocoPhillips argues that by denying its requested relief, the trial court has altered the class by permitting the class members to raise a cause of action not certified by the supreme court. In its brief on appeal, ConocoPhillips asks this court to vacate the trial court's order and require the appellees to proceed to trial with only the single express contract claim described in the supreme court's opinion in *Bowden*.

The orders in this case are denials of requested relief and do not alter the fundamental nature of the class. In *De Los Santos*, the supreme court observed that "[t]o deny interlocutory appeal in this situation, when class counsel agrees to a fundamental restructuring of the class to which they were once opposed, aggravated those concerns." *De Los Santos*, 933 S.W.2d at 495. This case does not present a similar situation in which denial of interlocutory appeal will work a fundamental injustice to the parties. The class was certified in 2002 and that certification was affirmed in 2008. In denying ConocoPhillips' requested relief, the trial court did not fundamentally alter that certification.

Accordingly, appellees' motion is granted; the appeal is dismissed for want of jurisdiction.

PER CURIAM

Panel consists of Justices Brown, Boyce, and McCally.

8