# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0198
═══════════

PHILLIPS PETROLEUM COMPANY, GPM GAS CORPORATION, PHILLIPS GAS
MARKETING COMPANY, PHILLIPS GAS COMPANY, AND GPM GAS TRADING
COMPANY, PETITIONERS,

v.

ROYCE YARBROUGH, RESPONDENT

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════

*~ consolidated for oral argument with ~*

═══════════
No. 12-0199
═══════════

IN RE CONOCOPHILLIPS COMPANY F/K/A PHILLIPS PETROLEUM COMPANY, DCP
MIDSTREAM, LP F/K/A GPM GAS CORPORATION, CONOCOPHILLIPS GAS
COMPANY F/K/A PHILLIPS GAS COMPANY, AND DCP MIDSTREAM MARKETING,
LLC F/K/A GPM GAS TRADING COMPANY

═══════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════════

**Argued January 10, 2013**

JUSTICE LEHRMANN delivered the opinion of the Court.

For the second time, we address issues of class certification in this action involving alleged underpayment of oil and gas royalties. In 2008, we reviewed the trial court's certification of three subclasses of royalty owners, each asserting a single breach-of-lease claim. *Bowden v. Phillips Petrol. Co.*, 247 S.W.3d 690 (Tex. 2008). After the court of appeals reversed the certification order as to all three subclasses, we affirmed in part and reversed and remanded in part on interlocutory appeal. *Id.* at 694. We affirmed as to the two subclasses that asserted claims for breach of the implied covenant to market. *Id.* at 702, 709. We reversed the decertification order as to the third subclass, which alleged breach of a uniform express royalty provision contained in gas royalty agreements (GRAs) that amended the class members' leases. *Id.* at 708. We also directed the trial court to conduct a res judicata analysis in determining whether certification was appropriate under former Rule 42(b)(4) of the Texas Rules of Civil Procedure.[1] *Id.* at 698.

On remand, Respondent Royce Yarbrough, class representative of the remaining subclass of royalty owners, amended her petition to allege that Phillips Petroleum Company and its affiliates (collectively, Phillips)[2] breached the implied covenant to market, which in turn contributed to their underpayment of royalties under the GRAs. Phillips filed various motions seeking a ruling from the trial court that there was no class claim for breach of the implied covenant to market, arguing that

---

[1] As noted in *Bowden*, former Rule 42(b)(4) is now codified as Rule 42(b)(3), and we will continue to refer to Rule 42(b)(3) as including the former (b)(4) paragraph. *Bowden*, 246 S.W.3d at 694 n.1.

[2] The named defendants in the operative petition are ConocoPhillips Company, successor by merger to Phillips Petroleum Company and Phillips Gas Marketing Company; DCP Midstream, LP, successor to GPM Gas Corporation; ConocoPhillips Gas Company, successor to Phillips Gas Company; and DCP Midstream Marketing, LLC, successor to GPM Gas Trading Company. For ease of reference, we will continue to refer to the defendants collectively as "Phillips," as we did in *Bowden*.

2

a new certification motion and hearing were required to determine whether the claim was an appropriate class claim under Rule 42(b)(3). These motions were all denied.

Phillips filed both a notice of interlocutory appeal and a petition for writ of mandamus in the court of appeals. That court dismissed the interlocutory appeal for lack of jurisdiction and denied the petition for writ of mandamus. Phillips then filed both a petition for review and a petition for writ of mandamus in this Court. We hold that the court of appeals erred in dismissing the interlocutory appeal for lack of jurisdiction, that the trial court abused its discretion in allowing the addition of a class claim for breach of the implied covenant to market without requiring Yarbrough to file an amended motion for class certification or holding a certification hearing, and that the trial court abused its discretion in failing to conduct a rigorous analysis of res judicata in contravention of our mandate in *Bowden*. Accordingly, we reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

### A. Pre-*Bowden* Proceedings[3]

This suit was filed as a putative class action on behalf of Texas royalty owners alleging Phillips underpaid oil and gas royalties. In September 2000, the trial court signed its first certification order, certifying three subclasses of royalty owners. *Bowden*, 247 S.W.3d at 694. On interlocutory appeal, the court of appeals reversed and remanded. *Id.* at 695. The royalty owners filed an amended certification motion, and in June 2002, following a hearing, the trial court entered

---

[3] Our opinion in *Bowden* contains a lengthy description of the factual background leading up to that opinion. We borrow from *Bowden* those portions that continue to be relevant in these proceedings.

the certification order at issue in *Bowden*. *Id.* The trial court again certified three subclasses of royalty owners, each of whom asserted a single claim for relief. *Id.* Subclasses 1 and 3 asserted a claim for breach of the implied covenant to market,[4] while Subclass 2 (the GRA class) alleged Phillips breached uniform provisions in the GRAs governing the calculation of royalty payments. *Id.* at 695–96.

On interlocutory appeal, the court of appeals reversed the certification order as to all three subclasses, holding that individual issues of liability would predominate over common issues. *Id.* at 694. The court of appeals further held, with respect to all three subclasses, that "the certification order impermissibly split the class members' causes of action," resulting in the application of res judicata to bar all unasserted breach of contract claims. *Id.* at 696. The court concluded that the class representatives' "willingness to abandon" all such unasserted claims rendered them per se inadequate to represent the class. *Id.* at 696–97.

### B. *Bowden* Holdings

We issued our opinion in *Bowden* in February 2008, affirming the court of appeals' decertification order in part and reversing in part. Addressing the res judicata issue first, we cited our intervening opinion in *Citizens Insurance Co. v. Daccach*, 217 S.W.3d 430 (Tex. 2007), in which we held that class suits are "subject to the same preclusion rules as other procedural forms of litigation" and that class members are therefore barred from asserting in subsequent litigation claims that arose from the same transaction or subject matter as the class claims and either could have been

---

[4] The subclass 3 claim was characterized as a breach of the implied covenant to manage and administer the lease. *Bowden*, 247 S.W.3d at 708. In *Bowden*, however, we held that the substance of the claim concerned Phillips's "alleged failure to diligently market the gas and obtain a higher price." *Id.* at 709.

or were litigated in the prior suit. *Bowden*, 247 S.W.3d at 697 (citing *Daccach*, 217 S.W.3d at 450, 451, 455). While we disagreed with the court of appeals' conclusion that class representatives who split claims are per se inadequate, *id.*, we noted that "[t]rial courts should assess the Rule 42 requirements in light of res judicata's preclusive effect on abandoned claims when considering whether to certify a class," *id.* at 698. We concluded:

> In the second certification order, the trial court acknowledged that the class limited its suit to a single claim for each subclass. On remand, it should consider the applicability of res judicata in future proceedings to abandoned claims in evaluating certifiability, as we explain in *Daccach*, as part of its determination [under Rule 42] of the prerequisites of commonality, typicality, superiority, adequacy of representation, and predominance.

*Id.* (citation omitted).

With regard to the court of appeals' order decertifying the three subclasses on predominance grounds, we affirmed as to Subclasses 1 and 3, but reversed as to the GRA class. *Id.* at 709. As to Subclass 1, we held that "individual issues would predominate" because the claim for breach of the implied covenant to market would require an evaluation of "the price a reasonably prudent operator would have received at the wellhead," and the royalty owners failed to provide evidence that such a price could be evaluated classwide. *Id.* at 701–02. Subclass 3, which alleged Phillips paid an unreasonably high post-production fee to the gas purchaser (affiliate GPM), similarly "fail[ed] to explain how a reasonable processing fee [could] be proven classwide." *Id.* at 709.

5

With respect to the GRA class, however, we disagreed with the court of appeals' conclusion that individualized issues would predominate.[5]  The GRA class was and is defined to include the following members:

> Royalty owners who own or owned royalty interests under leases located in the [S]tate of Texas; where Phillips Petroleum Company is the lessee; the royalty is paid pursuant to a Gas Royalty Agreement containing language substantially identical to the language bracketed in the Gas Royalty Agreement attached as Exhibit 1 and incorporated herein by reference; the Gas Royalty Agreement has no additional language relating to processing gas or the payment of royalty on natural gas liquids; and during the period February 1995 through the present.

*Id.* at 695.  The GRAs provide a specific formula for calculating the royalty, summarized in *Bowden* as "the 'weighted average price' multiplied by the total volume of natural gas production in M.c.f. times the one-eighth royalty interest, for gas delivered within the defined [multi]-county area."[6]  *Id.* at 703.  The royalty owners claimed that Phillips breached the GRAs in two ways: (1) by including in the weighted average price only sales of "dry residue natural gas production and exclud[ing] the liquid components, which are separated from the gas by Phillips's downstream processing"; and (2) by failing to include in the weighted average price an adjustment for "the varying heat content of the components of gas produced."  *Id.* at 703–04.

_____

[5] The court of appeals also held that GRA class representatives Royce Yarbrough and Ted Powell were inadequate, Yarbrough because of conflicts with the class stemming from the owners' proposed royalty calculation and Powell because there was no evidence of his adequacy. *Bowden*, 247 S.W.3d at 707. We affirmed as to Powell and reversed as to Yarbrough, who remains the GRA class representative. *Id.*

[6] There are three GRA forms, which provide for the weighted average price to be calculated using sales of gas in different groups of counties. Form BP includes sales within Hutchinson, Carson, Gray, and Wheeler Counties, Texas. Form H includes sales within Sherman and Hansford Counties, Texas, and Texas County, Oklahoma. Form MH includes sales within Moore, Hartley, Sherman, and Hansford Counties, Texas, and Texas County, Oklahoma.

The court of appeals' decertification of the GRA class was based on the trial court's implicit finding that the GRAs are ambiguous and its plan to submit the interpretation issue to the jury, thereby raising thousands of individual issues regarding the intent of the parties in entering into each GRA. *Id.* at 705. We disagreed, however, that the GRAs' pricing provisions are ambiguous. *Id.* at 706–07. Specifically, we held:

> The GRAs in Subclass 2 require royalties to be paid based on the volume of natural gas metered at the wells multiplied by a price averaged from sales to third parties, before liquid products are extracted or processed.

*Id.* at 707. We further held that the GRAs do not provide for an adjustment to the price for heating content. *Id.* at 706. Because the GRAs "are unambiguous and may be construed classwide for royalty owners who executed substantially identical GRAs," we held that the court of appeals erred in decertifying the GRA class on predominance grounds. *Id.* at 706–07. We remanded the case to the trial court "for further proceedings consistent with this opinion." *Id.* at 709.

### C. Proceedings on Remand

On remand, Yarbrough, as the sole representative of the only remaining subclass, filed an Eighth Amended Petition alleging that "the manner and method used by [Phillips] to market the GRA gas and pay royalties under the uniform GRAs" constituted breaches of Phillips's "express *and implied* obligations under the GRAs." (Emphasis added). Yarbrough further alleged, *inter alia*:

> [Phillips] has not calculated and paid royalties according to the express language of the GRAs and the Texas Supreme Court's construction of the GRAs, nor in a manner that complies with their implied obligation to diligently market the GRA gas production so as to obtain the best weighted average price reasonably obtainable.

7

Taking the position that the Eighth Amended Petition added new class claims requiring a new motion for certification and hearing, Phillips filed several motions requesting various forms of relief. First, Phillips filed a motion to decertify the class, requesting that the trial court order Yarbrough to file a motion for certification with respect to the new claims. The trial court denied the motion, noting at the hearing that a decertification motion was an "improper way" of addressing Phillips's contentions, which the trial court construed as "attacking the method of [the class's] asserting the proper way to calculate damages."

The parties then filed competing motions for entry of a trial plan order and filed briefs on the issue of res judicata and its effect on the propriety of class certification. While Phillips argued that the preclusive effect a class action judgment would have on individual claims abandoned by the representative rendered Yarbrough an inadequate representative of the GRA class, Yarbrough maintained that certification of the GRA class had already been affirmed in *Bowden* and that *Bowden*'s directive to the trial court regarding res judicata "contemplated the potential of future efforts to certify additional subclasses."

The trial court entered a Trial Plan Order describing Yarbrough's allegations in pertinent part as follows:

> During [the relevant] periods, . . . [Phillips] did not market the gas in a manner that allowed proper calculation of the weighted average price under the GRA, and used weighted average prices to calculate and pay royalties that did not include all components of the gas (pre-processing liquids) and were burdened with transportation and purification costs.

The trial court also entered a formal Order Denying Further Proceedings Regarding Res Judicata (the Res Judicata Order), stating:

[T]he Court reviewed the parties' briefing on res judicata and the proposed trial plans submitted by each party. The Court concluded, after review of the briefs, the supporting law and definition of the class that res judicata is adequately addressed by the class definition and the representatives of the class and that [Sub]class 2 as certified and approved by the Supreme Court of Texas fully sets out those individuals and their claims sufficiently to meet the preclusion requirements.

Following entry of the Trial Plan Order, Phillips filed a "Motion for Partial Summary Judgment on Implied Covenant Claims or, in the Alternative, Motion to Sever the Implied Covenant Claims or, in the Alternative, Motion for Order Clarifying that Plaintiff Yarbrough's Implied Covenant Claims Are Not Included in [the GRA class]" (the Alternative Motions). Phillips requested that the implied-covenant claims be severed from the express breach-of-lease claims, or that the trial court clarify that the implied-covenant claims were not included in the GRA class given Yarbrough's failure to take any action to seek certification of such claims. The trial court denied the Alternative Motions.

Phillips filed an interlocutory appeal of the order denying the Alternative Motions and the Res Judicata Order, as well as a petition for writ of mandamus. The court of appeals dismissed the interlocutory appeal for want of jurisdiction, holding that the trial court's orders did not "fundamentally alter[] the nature of the class" so as to make those orders immediately appealable under our decision in *De Los Santos v. Occidental Chemical Corp.*, 933 S.W.2d 493 (Tex. 1996) (per curiam). ___ S.W.3d ___, ___. The court of appeals also denied mandamus relief, holding that "[a]llowing mandamus to lie from the denial of a partial summary judgment in these circumstances would contravene the policies underlying limited mandamus review." ___ S.W.3d ___, ___. Phillips filed both a petition for review and a petition for writ of mandamus in this Court.

9

## II. Cause No. 12-0198: Interlocutory Appeal

### A. Jurisdiction

The Texas Civil Practice and Remedies Code permits an appeal from a trial court's interlocutory order that "certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(3). In turn, we have jurisdiction to consider a petition for review appealing such an order. TEX. GOV'T CODE § 22.225(d). On its face, the trial court's order denying Phillips's Alternative Motions is not an order that certifies or refuses to certify a class. Phillips asserts, however, that it is such an order in substance and is therefore subject to interlocutory appeal.

A trial court has discretion to alter or amend an order certifying a class. TEX. R. CIV. P. 42(c)(1)(C). Generally, modifications of certification orders, such as those modifying the size of a class or a class definition, are not appealable. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001); *see also Citgo Ref. & Mktg., Inc. v. Garza*, 94 S.W.3d 322, 328 (Tex. App.—Corpus Christi 2002, pet. dism'd by agr.) (holding that "an order that merely alters attributes of a class and does not affect the underlying certification of the action as a class action is not an order subject to interlocutory appeal"). However, in *De Los Santos* we held that an order changing a class action from opt-out to mandatory "alters the fundamental nature of the class" and that an interlocutory appeal of such an order is authorized. 933 S.W.2d at 495. The court of appeals in this case summarily held that the trial court's orders "are denials of requested relief and do not alter the fundamental nature of the class." ___ S.W.3d at ___.

10

The ruling in *De Los Santos* is narrow, reached in accordance with legislative intent "that section 51.014 be strictly construed as a narrow exception to the general rule that only final judgments and orders are appealable." *Bally Total Fitness Corp.*, 53 S.W.3d at 355 (citations and internal quotation marks omitted). The crux of the order being appealed in *De Los Santos* was that it changed the class in such a way as to call into question whether certification remained proper. Specifically, the alteration to the class resulted in potential conflicts between class members and class counsel, 933 S.W.2d at 495, which in turn raised concerns as to whether the class members were adequately represented by class counsel under Rule 42(a), *see Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954 (Tex. 1996) (explaining that the threshold requirement of adequacy of representation under Rule 42(a) mandates that both class representatives and their counsel be adequate). Thus, under *De Los Santos*, an order that changes the class in such a way as to raise significant concerns about whether certification remains proper alters the fundamental nature of the class and is therefore appealable. *De Los Santos*, 933 S.W.2d at 495.[7]

Yarbrough argues that the orders being appealed here, which effectively allow the GRA class to pursue a class claim for breach of the implied covenant to market, do not alter the fundamental nature of the GRA class, but merely modify the scope of the class's underpayment damages under the GRAs. Phillips, by contrast, argues that the inclusion of an implied-covenant claim on remand changes the fundamental nature of the class we upheld in *Bowden*, which Phillips describes as "a

---

[7] In holding that interlocutory appeal jurisdiction existed in *De Los Santos*, we did not go so far as to require a finding that the trial court's order changed the class in such a way as to actually result in an improperly certified class. *See De Los Santos*, 933 S.W.2d at 495 (remanding to the court of appeals to determine the merits of the appeal). Such a holding would have conflated the jurisdictional analysis with the merits of the appeal.

class asserting only one claim for breach of express provisions of the uniform GRAs." We agree with Phillips.

Certification is conducted "on a claim-by-claim, rather than holistic, basis" in order "to preserve the efficiencies of the class action device without sacrificing the procedural protections it affords to unnamed class members." *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000) (addressing certification under Rule 23 of the Federal Rules of Civil Procedure); *see also Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452–53 (Tex. 2000) (noting that "there is no right to litigate a *claim* as a class action" (emphasis added)). In *Bowden*, we analyzed the propriety of certification with respect to the "breach of contract claim [brought] on behalf of each respective subclass." *Bowden*, 247 S.W.3d at 696.

With respect to the GRA class, the claim we analyzed was that Phillips failed to properly calculate royalties under the formula contained in the express provisions of the GRAs. *Id.* at 703–04. As discussed above, that formula requires multiplying the "weighted average price" by the volume of gas produced and adjusting for the interest owned. *Id.* at 702–03. We interpreted the GRAs to unambiguously require "royalties to be paid based on the volume of natural gas metered at the wells multiplied by a price averaged from sales to third parties, before liquid products are extracted or processed." *Id.* at 707. Because the GRAs' pricing provisions could be so "construed classwide for royalty owners who executed substantially identical GRAs," we held that the GRA class satisfied Rule 42(b)(3)'s predominance requirement. *Id.* at 706–07. Yarbrough now alleges not only that Phillips breached the express royalty provisions of the GRAs, but also that Phillips failed to comply

12

with its "implied obligation to diligently market the GRA gas production so as to obtain the best weighted average price reasonably obtainable."

Yarbrough significantly overstates the scope of the original GRA claim we analyzed in *Bowden* in claiming that it "includes the breach of implied covenants claim and all other underpayment of royalty claims, which have undergone rigorous Rule 42 analysis, and even this Court's scrutiny." A duty to market is implied in leases that base royalty calculations on the price received by the lessee for the gas. *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 373–74 (Tex. 2001). A lessee may breach its implied covenant to market regardless of whether the lessee complies with the lease's express provisions; indeed, the purpose of an implied covenant claim is to protect a lessor from the lessee's negligence or self-dealing that would result in unfairly low royalties under the express provisions. *See id.* Thus, while the claim we addressed in *Bowden* involved whether Phillips took the proper gas sales into account in calculating the weighted average price, the implied covenant claim Yarbrough added on remand requires consideration of whether the weighted average price, as properly calculated under our interpretation of the GRAs, was nevertheless not the "highest weighted average price reasonably obtainable" because of Phillips's failure to reasonably market the gas.

That said, we do not share Phillips's view that the implied-covenant claim now being asserted by the GRA class raises the exact same predominance issues that defeated certification of Subclasses 1 and 3. *See Bowden*, 247 S.W.3d at 701 (holding that a trial on Subclass 1's implied covenant claim would require the jury to "conduct a well-by-well analysis" in order "to determine the price a reasonably prudent operator would have received at the wellhead"). Because the GRA

13

royalties are calculated using a weighted average price that is common for all royalty owners whose leases are amended by the same GRA form, there is a significant difference between the implied-covenant claim alleged by the GRA class and the implied-covenant claims that were pursued by Subclasses 1 and 3. Specifically, while the facts and circumstances of many individual sales would need to be examined to evaluate the reasonableness of the monthly weighted average price for the GRA class, that same analysis would be required to evaluate the reasonableness of the monthly weighted average price for a single class member. In other words, the number of individualized sales that must be evaluated does not increase with the number of claims. Accordingly, the specific concerns that led us to decertify Subclasses 1 and 3 do not appear to be present with respect to the implied-covenant claim asserted by the GRA class.

Nevertheless, the new claim raises other concerns regarding the propriety of certification that were not present and thus were not evaluated in *Bowden*. First, Phillips asserts that the leases of an unidentified number of GRA class members contain express covenants to market that supersede—and require different duties than—the implied covenant to market. *See Yzaguirre*, 53 S.W.3d at 373 (noting that there is no implied covenant when the lease expressly covers the subject matter of the implied covenant). In response, Yarbrough contends that the GRA amends any express covenant to market that may exist in the class members' original leases, that the GRA does not contain an express covenant to market, and that the GRA therefore contains an implied covenant to market applicable to the leases of all GRA class members. We conclude Yarbrough reads the GRAs too broadly.

14

The GRAs amend their corresponding leases by "substituting" the GRA provisions "in lieu of" the lease provisions "for payment of royalty." While a lessee's duty to market certainly can affect the royalty it owes under a proceeds-based lease, this duty is not properly pigeonholed solely as a provision "for payment of royalty." In *Bowden*, we cited the following example of an express duty-to-market clause contained in the lease of a member of now-decertified Subclass 1:

> Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to . . . market gas upon terms unacceptable to lessee.

247 S.W.3d at 699 n.3. Whether a lessee complies with such a covenant may be determined independently of whether the express royalty provisions were properly applied. Thus, the absence of an express covenant to market in the GRAs does not automatically impose an implied covenant to market in those leases with provisions that "expressly cover[] the subject matter of [that] implied covenant." *Yzaguirre*, 53 S.W.3d at 373. In turn, the existence of express covenants to market in some class members' leases, while not necessarily defeating predominance,[8] raises a significant issue that was not present and that we thus did not consider with respect to the GRA class in *Bowden*.

The implied covenant claim also raises concerns as to the typicality of Yarbrough's claims under Rule 42(a). A class representative's claim must be "typical of the claims or defenses of the class." TEX. R. CIV. P. 42(a)(3). "A claim is typical if it arises from the same event or practice or

---

[8] This fact did underlie the court of appeals' decertification of Subclass 1 on predominance grounds; however, we affirmed for different reasons, noting that it was "not clear from the record that any of the express duty to market clauses would in practice require different conduct from the duty in the implied covenant to market." *Bowden*, 247 S.W.3d at 701.

course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010) (citation and internal quotation marks omitted). Yarbrough's claim for Phillips's breach of the implied covenant to market is based on the same legal theory as the claim of the GRA class as a whole—whether Phillips failed to reasonably market the gas and to "obtain the best weighted average price reasonably obtainable." However, whether Phillips breached its implied covenant to market depends on where the gas was sold, which in turn depends on which of the three GRA forms is at issue.

As discussed above, in formulating the weighted average price under the GRAs, Form BP utilizes gas sales occurring within Hutchinson, Carson, Gray, and Wheeler Counties, Texas; Form H includes sales within Sherman and Hansford Counties, Texas, and Texas County, Oklahoma; and Form MH includes sales within Moore, Hartley, Sherman, and Hansford Counties, Texas, and Texas County, Oklahoma. Yarbrough's leases are amended by GRA Form H.[9] Thus, while Yarbrough's implied-covenant claim against Phillips appears to be "typical" of the claims of other class members whose leases are also amended by GRA Form H, it remains to be seen whether Yarbrough's claim is typical of the claims of other class members whose leases are amended by GRA Forms BP and MH. *See Adams v. Reagan*, 791 S.W.2d 284, 290 (Tex. App.—Fort Worth 1990, no pet.) (noting that "[t]he presence of even an arguable defense peculiar to a named plaintiff or a small subset of

---

[9] Although Yarbrough has two leases with Phillips, only one is in the record with its accompanying GRA. There is no indication in the record whether Yarbrough's other lease was amended by a different GRA form.

16

the plaintiff class destroys the typicality of the class" (citing *J. H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980))).

As Yarbrough recognizes, the focus of an action for breach of an implied covenant to market will be the conduct of the lessee. *Union Pac. Res. Grp., Inc. v. Hankins*, 111 S.W.3d 69, 71 (Tex. 2003). The propriety of Phillips's behavior with respect to conducting sales in one county is not necessarily indicative of the propriety of its behavior in conducting sales within another county. This distinction was not material to the breach of contract claim we analyzed in *Bowden*, but it could very well be material to the implied covenant claim that is now being asserted.

In sum, while we do not fully endorse Phillips's characterization of the effect of the implied-covenant claim on certification of the GRA class, we agree that the trial court changed the fundamental nature of the class in allowing the addition of the claim. The new implied-covenant claim requires different proof of different conduct than did the claim we evaluated in *Bowden*. Further, the new claim raises concerns about the propriety of certification that, regardless of whether certification is ultimately ordered or upheld, were not present or considered with respect to the class claim affirmed in *Bowden*. Accordingly, the court of appeals had jurisdiction to review the merits of the appeal, as do we. In the interest of judicial economy, rather than remanding to the court of appeals, we will address the merits of Phillips's challenge to the trial court's order allowing Yarbrough to assert an implied-covenant claim on behalf of the GRA class. *See Segrest v. Segrest*, 649 S.W.2d 610, 611 (Tex. 1983).

## B. Class Certification

We review for an abuse of discretion the trial court's order that denied the Alternative Motions and thereby changed the fundamental nature of the class. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002). We decline to hold at this point that certification of the GRA class on the implied-covenant claim is necessarily improper. However, the effect of the trial court's order was to certify a new class without the benefit of a motion for certification or a certification hearing. Further, as discussed above, the new claim raises issues of typicality and predominance that have not been adequately considered by the trial court. The trial court thus abused its discretion by failing to conduct the "rigorous analysis" we have emphasized is required in certifying a class. *Id.* at 688; *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000). It may very well be the case that class certification is appropriate with respect to the implied-covenant claim, but "[c]ompliance with Rule 42 must be demonstrated; it cannot merely be presumed." *Henry Schein*, 102 S.W.3d at 691. Should the royalty owners demonstrate compliance with Rule 42 on remand with respect to the implied-covenant claim,[10] they will be entitled to certification.[11]

---

[10] In conducting the analysis, the trial court should also take into account Yarbrough's new assertions in the Eighth Amended Petition that Phillips breached the GRAs by failing to include pre-plant condensates in calculating the weighted average price and by reducing the weighted average price by the costs of transportation and purification. *See Bowden*, 247 S.W.3d at 704 n.7 (noting that the royalty owners were not at that time complaining about condensate production).

[11] We do not address Phillips's argument that the GRAs provide an objective basis for calculating royalties such that Phillips owes the GRA class no implied duty to reasonably market the gas as a matter of law. *See Yzaguirre*, 53 S.W.3d at 374 (explaining that no covenant to market is implied where "the lease provides an objective basis for calculating royalties that is independent of the price the lessee actually obtains"). This argument relates solely to the merits of Yarbrough's implied covenant claim, which are not at issue here.

18

**C. Res Judicata**

Phillips contends that, in certifying the class, the trial court failed to conduct a rigorous analysis regarding the effect of res judicata on the Rule 42 requirements in accordance with both our decision in *Daccach* and our mandate in *Bowden*. We agree. As discussed above, in remanding the proceedings in *Bowden*, we instructed the trial court to "consider the applicability of res judicata in future proceedings to abandoned claims in evaluating certifiability, as we explain in *Daccach*, as part of its determination [under Rule 42] of the prerequisites of commonality, typicality, superiority, adequacy of representation, and predominance." 247 S.W.3d at 698. Yarbrough argued on remand, and continues to argue in this Court, that the res judicata directive in *Bowden* contemplated only "future efforts to certify additional subclasses," as opposed to the GRA class that had already been certified. Yarbrough misreads our directive.

As noted previously, our opinion in *Daccach* was issued after the trial court's certification order was entered and reversed by the court of appeals in this case. We held in *Bowden* that the court of appeals erred in finding the class representatives per se inadequate for splitting claims and clarified that, under *Daccach*, the decision to pursue some claims and abandon others "is one relevant factor in evaluating the requirements for class certification such as typicality, superiority, and adequacy of representation." *Id.* at 697–98 (citing *Daccach*, 217 S.W.3d at 448). This makes sense because certification may unfairly force members to choose between class membership and giving up viable claims that could otherwise be asserted individually.

Although we reversed the court of appeals' decertification of the GRA class, that holding was based on our conclusion that the GRAs were not ambiguous and thus need not be construed by the

19

jury on a lease-by-lease basis. *Id.* at 706–07. Notably, we did not analyze the effect of res judicata on the propriety of certification; instead, we instructed the trial court to do so on remand. *Id.* at 698; *see also id.* at 696 ("Although all three subclasses involve lease agreements, the class representatives, on behalf of the royalty owners, did not assert all claims involving the lease agreements at issue, choosing to assert only those claims they believed likely to meet the predominance requirement of Rule 42(b)(3).").

The importance of the res judicata analysis should not be overlooked, as "[a] class representative's decision to abandon certain claims may be detrimental to absent class members for whom those claims could be more lucrative or valuable." *Daccach*, 217 S.W.3d at 457. It is thus the trial court's responsibility, as part of its Rule 42 "rigorous analysis," to assess the rule's requirements "with awareness of res judicata's preclusive effect on abandoned claims." *Id.* at 460. In this case, the trial court's Res Judicata Order summarily states that "res judicata is adequately addressed by the class definition and the representatives of the class." Without an explanation of how the trial court determined that the risk of preclusion was "not high enough to refuse certification," *id.* at 457, we cannot conclude that the trial court conducted the rigorous analysis required by Rule 42.

### III. Cause No. 12-0199: Petition for Writ of Mandamus

In light of our disposition of Phillips's interlocutory appeal, we need not reach or evaluate Phillips's petition for writ of mandamus. Accordingly, the petition is dismissed as moot.

## IV. Conclusion

A trial court's order changes the fundamental nature of a class, and is therefore subject to interlocutory appeal under section 51.014(a)(3) of the Texas Civil Practice and Remedies Code, if it modifies the class in such a way as to raise significant concerns about whether certification remains proper. In this case, the trial court's order denying Phillips's Alternative Motions allowed the addition of a new class claim that raised such concerns, without the required rigorous analysis to determine whether certification was appropriate. The trial court further failed to consider the effect of res judicata on abandoned claims in accordance with our directive in *Bowden*. We express no opinion on the proper outcome of a rigorous Rule 42 analysis, but we do require the trial court to conduct it. Accordingly, we reverse the court of appeals' order dismissing the interlocutory appeal, dismiss the petition for writ of mandamus as moot, and remand the case to the trial court for further proceedings consistent with this opinion.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 21, 2013