ACCEPTED
03-15-00436-CV
6465052
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/12/2015 2:02:21 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00436-CV**

**In the Third Court of Appeals**
**Austin, Texas**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/12/2015 2:02:21 PM
JEFFREY D. KYLE
Clerk

**CHARLES O. "CHUCK" GRIGSON,**
**GERALD HOOKS, AND LESLIE HOOKS,**
*Appellants,*

**v.**

**THE STATE OF TEXAS; THE TEXAS DEPARTMENT OF**
**INSURANCE; THE TEXAS COMMISSIONER OF INSURANCE;**
**AND FARMERS GROUP, INC. ET AL.,**
*Appellees.*

On Appeal from the 261st Judicial District Court, Travis County, Texas
Cause No. D-1-GV-02-002501

**APPELLEES' MOTION FOR LEAVE TO FILE REPLY IN FURTHER**
**SUPPORT OF JOINT MOTIONS TO DISMISS APPELLANTS'**
**APPEALS FOR LACK OF APPELLATE JURISDICTION**

Marcy Hogan Greer
State Bar No. 08417650
mgreer@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON &
TOWNSEND LLP
515 Congress Ave., Suite 2350
Austin, Texas 78701
Telephone: 512-482-9300
Telecopier: 512-482-9303

M. Scott Incerto
State Bar No. 10388950
scott.incerto@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: 512-474-5201
Telecopier: 512-536-4598

**COUNSEL FOR DEFENDANTS-APPELLEES**
**THE FARMERS PARTIES**

Joshua R. Godbey
State Bar No. 24049996
joshua.godbey@texasattorneygeneral.gov
Ryan S. Mindell
State Bar No. 24089707
ryan.mindell@texasattorneygeneral.gov
Jennifer S. Jackson
State Bar No. 24060004
jennifer.jackson@texasattorneygeneral.gov
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-4209
Fax: (512) 477-2348)

**COUNSEL FOR PLAINTIFFS-APPELLEES, THE**
**STATE OF TEXAS, THE TEXAS DEPARTMENT**
**OF INSURANCE, AND THE TEXAS**
**COMMISSIONER OF INSURANCE**

TO THE HONORABLE COURT OF APPEALS:

Appellees, the State of Texas, the Texas Department of Insurance and the Texas Commissioner of Insurance (jointly, "the State") and the Farmers Parties[1] (together with the State, the "Settling Parties") file this Motion for Leave to File Reply in Further Support of Joint Motions to Dismiss Appellants' Appeals for Lack of Appellate Jurisdiction to show the Court the following:

Appellant Charles O. "Chuck" Grigson filed his Response to Appellees' Joint Motion to Dismiss for Lack of Appellate Jurisdiction ("Grigson's Response") on July 31, 2015.

Appellants Gerald and Leslie Hooks untimely[2] filed their Response to Appellees' Joint Motion to Dismiss Gerald and Leslie Hookses' Appeal for Lack of Appellate Jurisdiction ("Hookses' Response") on August 7, 2015.

Grigson's Response and the Hookses' Response necessitate a reply by the Settling Parties to address Grigson's and the Hookses' characterizations of the record and the law applicable to this case.

---

[1] Farmers Group, Inc., Fire Underwriters Association, Farmers Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Farmers Texas County Mutual Insurance Company, Truck Insurance Exchange, and Truck Underwriters Association

[2] On July 27, 2015, this Court directed the Hookses to file their response on or before August 6, 2015.

## CONCLUSION AND PRAYER

For these reasons, the Appellees, the Settling Parties, request that the Court grant them leave to file the accompanying Joint Reply, consider the attached Joint Reply, and grant all other and further relief the Appellees have requested in this appeal and are entitled to.

Date: August 12, 2015                        Respectfully submitted,

/s/ *M. Scott Incerto*
Marcy Hogan Greer
State Bar No. 08417650
mgreer@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
Telephone: (512) 482-9300
Facsimile: (512) 482-9303

M. Scott Incerto
State Bar No. 10388950
scott.incerto@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: 512-474-5201
Telecopier: 512-536-4598

Darryl W. Anderson
State Bar No. 24008694
darryl.anderson@nortonrosefulbright.com
Geraldine W. Young
State Bar No. 24084134
geraldine.young@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010 3095
Telephone: 713 651 5151
Telecopier: 713 651 5246

ATTORNEYS FOR DEFENDANTS-APPELLEES FIRE
UNDERWRITERS ASSOCIATION, FARMERS GROUP,
INC., FARMERS UNDERWRITERS ASSOCIATION,
FARMERS INSURANCE EXCHANGE, FIRE INSURANCE
EXCHANGE, TEXAS FARMERS INSURANCE COMPANY,
MID-CENTURY INSURANCE COMPANY OF TEXAS,
MID-CENTURY INSURANCE COMPANY, FARMERS
TEXAS COUNTY MUTUAL INSURANCE COMPANY,
TRUCK INSURANCE EXCHANGE, AND TRUCK
UNDERWRITERS ASSOCIATION

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ROBERT O'KEEFE
Division Chief
Financial Litigation, Tax, and Charitable Trusts Division

 /s/ *Joshua R. Godbey*
JOSHUA R. GODBEY
Assistant Attorney General
LEAD ATTORNEY
State Bar No. 24049996
Telephone: (512) 475-4209
joshua.godbey@texasattorneygeneral.gov
RYAN S. MINDELL
Assistant Attorney General
State Bar No. 24089707
Telephone: (512) 936-1721
ryan.mindell@texasattorneygeneral.gov
JENNIFER S. JACKSON
Assistant Attorney General
State Bar No. 24060004
Telephone: (512) 463-9917
jennifer.jackson@texasattorneygeneral.gov
Financial Litigation, Tax, and Charitable Trusts Division
P.O. Box 12548
Austin, Texas  78711-2548
Fax: (512) 477-2348)

**ATTORNEYS FOR PLAINTIFFS-APPELLEES, THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, AND THE TEXAS COMMISSIONER OF INSURANCE**

4

**CERTIFICATE OF SERVICE**

On August 12, 2015, I electronically filed the Appellees' Motion for Leave to File Reply in Further Support of Joint Motions to Dismiss Appellants' Appeals for Lack of Appellate Jurisdiction with the Clerk of the Court using the eFile.TXCourts.gov electronic filing system which will send notification of such filing to the following (unless otherwise noted below).

Joe K. Longley
Philip K. Maxwell
1609 Shoal Creek Blvd. # 100
Austin, TX 78701
Joe@JoeLongley.com
phil@philmaxwell.com

*Counsel for Appellant Charles O.*
*"Chuck" Grigson*

Joseph C. Blanks
P.O. Box 999
Doucette, TX 75942
blanxlex@gmail.com

*Counsel for Appellants Gerald and*
*Lesly Hooks*

Michael J. Woods
8620 N. New Braunfels, Ste. 522
San Antonio, TX 78217
MichaelJWoods@sbcglobal.net

*Pro Se Intervenor/Objector*

/s/ *M. Scott Incerto*
M. Scott Incerto

**CERTIFICATE OF CONFERENCE**

I certify that, on August 11, 2015, I conferred with Joe K. Longley, counsel for Appellant Charles O. "Chuck" Grigson, and with Joseph Blanks, counsel for Appellants Gerald and Leslie Hooks, about the merits of the foregoing motion, pursuant to Texas Rule of Appellate Procedure 10.1(a)(5), and they stated, respectively, that Grigson and the Hookses were opposed to the motion.

/s/ *M. Scott Incerto*
M. Scott Incerto

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4(i)**

I certify that the foregoing document contains 310 words and complies with the word limit set forth in Texas Rule of Appellate Procedure 9.4(i).

/s/ *M. Scott Incerto*
M. Scott Incerto

No. 03-15-00436-CV

---

**In the Third Court of Appeals**
**Austin, Texas**

---

**CHARLES O. "CHUCK" GRIGSON,**
**GERALD HOOKS, AND LESLIE HOOKS,**
*Appellants,*

**v.**

**THE STATE OF TEXAS; THE TEXAS DEPARTMENT OF**
**INSURANCE; THE TEXAS COMMISSIONER OF INSURANCE;**
**and FARMERS GROUP, INC. ET AL.,**
*Appellees.*

---

On Appeal from the 261st Judicial District Court, Travis County, Texas
Cause No. D-1-GV-02-002501

---

**APPELLEES' REPLY IN FURTHER SUPPORT OF JOINT MOTIONS**
**TO DISMISS APPELLANTS GRIGSON'S AND THE HOOKSES'**
**APPEALS FOR LACK OF APPELLATE JURISDICTION**

---

Marcy Hogan Greer
State Bar No. 08417650
mgreer@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON &
TOWNSEND LLP
515 Congress Ave., Suite 2350
Austin, Texas 78701
Telephone: 512-482-9300
Telecopier: 512-482-9303

M. Scott Incerto
State Bar No. 10388950
scott.incerto@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: 512-474-5201
Telecopier: 512-536-4598

**COUNSEL FOR DEFENDANTS-APPELLEES**
**THE FARMERS PARTIES**

Joshua R. Godbey
State Bar No. 24049996
joshua.godbey@texasattorneygeneral.gov
Ryan S. Mindell
State Bar No. 24089707
ryan.mindell@texasattorneygeneral.gov
Jennifer S. Jackson
State Bar No. 24060004
jennifer.jackson@texasattorneygeneral.gov
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas  78711-2548
Telephone: (512) 475-4209
Fax: (512) 477-2348)

**COUNSEL FOR PLAINTIFFS-APPELLEES, THE**
**STATE OF TEXAS, THE TEXAS DEPARTMENT**
**OF INSURANCE, AND THE TEXAS**
**COMMISSIONER OF INSURANCE**

TO THE HONORABLE COURT OF APPEALS:

Appellees, the State of Texas, the Texas Department of Insurance and the Texas Commissioner of Insurance (jointly, "the State") and the Farmers Parties[1] (together, the "Settling Parties") file this Reply in further support of their:

(1) Joint Motion to Dismiss Appellant Charles O. "Chuck" Grigson's Appeal for Lack of Appellate Jurisdiction and Request for Expedited Consideration of the Motion ("Motion to Dismiss Grigson's Appeal"), which was filed on July 20, 2015; and

(2) Joint Motion to Dismiss Appellants Gerald and Leslie Hookses' Appeal for Lack of Appellate Jurisdiction and Request for Expedited Consideration of the Motion ("Motion to Dismiss Hookses' Appeal"), which was filed on July 24, 2015.

This Reply also responds to Grigson's Response to the Motion to Dismiss Grigson's Appeal ("Grigson's Response") that was filed on July 31, 2015, and the Hookses' Response to the Motion to Dismiss Hookses' Appeal ("Hookses' Response") that was untimely filed on August 7, 2015.[2]

---

[1] Farmers Group, Inc., Fire Underwriters Association, Farmers Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Farmers Texas County Mutual Insurance Company, Truck Insurance Exchange, and Truck Underwriters Association

[2] On July 27, 2015, this Court directed the Hookses to file their response on or before August 6, 2015.

## PRELIMINARY STATEMENT

Grigson's and the Hookses' Responses confirm that the district court's Order of Preliminary Approval ("Preliminary Approval Order") cannot be appealed under the narrow jurisdictional window for orders that certify or refuse to certify a class. Grigson and the Hookses (jointly, "Intervenors") can point to no language in the order that certifies the Settlement Classes.[3] Given that the Settlement Classes were indisputably certified in 2003 and affirmed on appeal by the Texas Supreme Court and this Court, it is not surprising that the district court did not engage in a superfluous re-certification of the same classes—a fact Intervenors recognized at the preliminary approval hearing itself, but now seek to avoid in an effort to obtain an unwarranted second bite at the appellate apple.

To try and create an appellate hook, Intervenors' Responses resort to contradictory positions and mischaracterization. Intervenors assert that the district court's reference to its prior certification decision, approval of class notice, and rejection of Grigson's "collusion" allegations somehow means that the court "expressly" certified the Settlement Classes anew. In the alternative, they argue the converse—that the district court also wrongly omitted express certification language from the Preliminary Approval Order. In this regard, they claim that the

---

[3] For consistency, the Settling Parties will continue to use the terms they defined in their Motions to Dismiss.

2

prior 2003 certification decision "terminated" or was "abandoned"—even though the Parties to the agreement themselves and the district court have confirmed that the relevant documents do not support such an interpretation. Intervenors also argue that an interlocutory appeal is permitted because the Preliminary Approval Order "altered" the Settlement Classes but they fail to show any alteration in the Settlement Classes—only changes in the Settlement Agreement, which are not appealable at this time. In short, Grigson's and the Hookses' arguments are supported by neither law nor evidence and fail to provide any jurisdictional basis for their identical attempted appeals. Grigson's arguments about staying class notice are the same groundless assertions from his Emergency Motion to Stay the Sending of Class Notice and should also be rejected.

For the reasons demonstrated here and in the Settling Parties' Motions to Dismiss, Grigson's and the Hookses' appeals should be dismissed.

## ARGUMENT

### I. Intervenors Fail to Demonstrate that the District Court's Preliminary Approval Order Certified a Class Action

Grigson first argues that the Preliminary Approval Order is, "[b]y its express terms . . . a class certification order" because the Order contains language about the class definitions, class notice, and no collusion that is similar to the language found

3

in the Texas class action rule, Texas Rule of Civil Procedure 42.[4] Grigson's Response at 2. The Hookses, on the other hand, concede that the Order lacks express certification but nonetheless argue that it "certifies the settlement classes." Hookses' Response at 2.

At the outset, Intervenors' inability to identify any actual class certification language in the Order defeats their own arguments. If there were any doubt, the Court need only read the passages from the July 2015 preliminary approval hearing where the district court made it absolutely clear that it was *not* recertifying the Settlement Classes and was rejecting arguments that recertification was required under any reading of the Settlement Agreement or the district court's prior orders. Ex. 3 to Motion to Dismiss Grigson's Appeal, Tr. 122-23, 133-34. Indeed, Grigson's complaint to the district court was not that it wrongly certified a class but instead that the district court erred in refusing to make another certification determination.[5] Because, as Grigson complained, the district court did not even decide certification, its Preliminary Approval Order cannot be one that "certifies or

---

[4] In fact, the certification of this class action was affirmed pursuant to the Insurance Code, *see* Tex. Ins. Code § 541.251, as the Texas Supreme Court made clear in its prior ruling affirming the certification decision. *See Lubin v. Farmers Grp., Inc.*, 222 S.W.3d 417, 424-27 (Tex. 2007).

[5] *See* Ex. 3 to Motion to Dismiss Grigson's Appeal, Tr. 122 (Grigson's counsel objecting to "an order that does not certify classes"), Tr. 134:14-16 (Grigson's counsel acknowledging on the record that the district court's Order "will not have a separate certification or refusal to certify"); Ex. 4 to Grigson's Response, at 4 (Grigson's Response to Preliminary Approval, May 15, 2015) ("Grigson objects to preliminary approval of the proposed settlement without a hearing on whether the settlement classes can be certified and a Court determination on that issue.").

4

refuses to certify a class." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(3). Unable to quote any actual "express terms," Intervenors instead present the Court with an entirely twisted reading of the Preliminary Approval Order that fails to provide interlocutory jurisdiction.

First, Intervenors have no basis, under Rule 42, Texas Insurance Code § 541.251, or any other authority, to argue that the mere recitation of the settlement class definitions somehow turns an order into a certification decision. *See* Grigson's Response at 2. As is evident from the face of the Order, the district court only acknowledged that it "previously certified" the classes, with definitions that have not changed since 2003, and that the certification "has been affirmed in its entirety by the appellate courts of Texas." Ex. 1 to Motion to Dismiss Grigson's Appeal, at 2-3 ¶ 2. That is not a certification or a refusal to certify.

Second, Intervenors cannot establish interlocutory appellate jurisdiction based on the district court's approval of a revised class notice in the Preliminary Approval Order. *See, e.g., Citgo Ref. and Mktg., Inc. v. Garza*, 94 S.W.3d 322, 327 (Tex. App.—Corpus Christi-Edinburg 2002, no pet.) ("[N]o Texas court has held that an order approving the form of notice to a class is subject to interlocutory appeal. . . . the present attempted appeal is dismissed for want of jurisdiction.").

Third, contrary to Intervenors' arguments, the Preliminary Approval Order does not "fundamentally alter[]" the 2003 certification decision in this case. *See*

5

Grigson's Response at 2. It does not alter the Settlement Classes one iota. Grigson's redline comparison in his Response actually demonstrates that any changes made to the no collusion portion of the Order were minor and immaterial. *See* Grigson's Response at 3. In the Order, the district court affirms its previous conclusion about no collusion and the State's representation of the classes. Ex. 1 to Motion to Dismiss Grigson's Appeal, at 3 ¶ 5. Nowhere does the court say that it is making a new certification determination under Rule 42(a)(4) or Texas Insurance Code § 541.251. Moreover, Intervenors' "collusion" allegations were considered in connection with ***preliminary approval of the settlement***—not class certification—and the preliminary approval is not subject to an interlocutory appeal. *See McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 234 (Tex. 2001) ("[T]he trial court's preliminary approval of the [] settlement has no binding force. . . . appellate review is premature.").

Finally, Intervenors' overall argument—that a ***class action*** order that merely mentions ***class action*** requirements is an appealable order under § 51.014(a)(3)—is contrary to the statute and well-established Texas law and public policy.[6] It was "the [Texas] Legislature's intent that section 51.014 be strictly construed . . . [and]

---

[6] *Hall v. Pedernales Elec. Co-op., Inc.*, 278 S.W.3d 536, 549 (Tex. App.—Austin 2009, no pet.) ("Appellate review of the trial court's approval of a class settlement is limited, due to 'the strong judicial policy favoring the resolution of disputes through settlement.'"); *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003) (law of the case doctrine).

6

that an appeal lies only from an order that 'certifies or refuses to certify a class.'" *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355, 358 (Tex. 2001).  It was ***not*** the Legislature's intent to "[a]llow[] interlocutory appeals whenever a trial court refuses to change its mind" like the district court did here when it refused to re-do its 2003 certification decision; a contrary rule "would invite successive appeals and undermine the statute's purpose of promoting judicial economy."  *City of Houston v. Estate of Jones*, 388 S.W.3d 663, 667 (Tex. 2012) (per curiam).  Texas courts have even gone so far as to reject attempted interlocutory appeals from orders modifying a class definition or the size of a class[7] and orders refusing to decertify a class.[8]

Thus, had Intervenors actually moved the district court to decertify the classes based on their "collusion" and "conflict" arguments or the purported

---

[7] *Bally*, 53 S.W.3d at 355 ("[T]he statute does not authorize an appeal of an order merely enlarging the size of a class or an order modifying a class's definition."); *Tana Oil & Gas Corp. v. Cernosek*, No. 03-02-00096-CV, 2002 WL 536308, at *1 (Tex. App.—Austin Apr. 11, 2002, no pet.) (dismissing an interlocutory appeal from a class modification order for lack of jurisdiction); *Garza*, 94 S.W.3d at 328 ("[A] trial court's exercise of its continuing power to alter or amend the nature of an existing certified class by an order increasing its size does not 'certify or refuse to certify a class' for purposes of an interlocutory appeal.  Similarly, an order modifying the class definition is not subject to interlocutory appeal . . . .").

[8] *Estate of Jones*, 388 S.W.3d at 667 ("A trial court's refusal to decertify was not the functional equivalent of a decision granting certification; the Legislature could have added language to section 51.014(a)(3) to permit appeals from orders refusing to decertify a class, but did not."); *Rainbow Grp., Ltd. v. Wagoner*, 219 S.W.3d 485, 491 (Tex. App.—Austin 2007, no pet.) ("[A]n order denying a motion to decertify a class is not within the scope of the statute authorizing interlocutory appeals."); *Union Pac. Res. Grp., Inc. v. Hankins*, 51 S.W.3d 738, 740-41 (Tex. App.—El Paso 2001, no pet.) (holding that the trial court's orders supplementing a class certification order and denying a motion to reconsider certification were not appealable).

termination of the prior settlement, clear authority from the Texas Supreme Court would have precluded an appeal from an order denying that relief. Yet Intervenors ask this Court to uphold jurisdiction over these same issues, where they never even attempted to modify, much less move to decertify, the Settlement Classes. If intervenors could create appellate jurisdiction over class action settlements merely by refraining from actually filing a formal motion to decertify, the limits on jurisdiction enforced by the Texas Supreme Court would be rendered illusory.

The district court's Preliminary Approval Order had zero impact on the certified classes, precluding any legitimate argument for an interlocutory appeal at this time. The Preliminary Approval Order only preliminarily approved the Settlement Agreement and authorized that a revised class notice, 12 years overdue, finally be sent to the 1.8 million absent class members. Such an order does not fit within the legislature's small window for interlocutory appeals.

## II. The Preliminary Approval Order Is Not Otherwise Appealable

### A. The 2003 Certification Still Governs, As the Law of the Case and As Recognized by the District Court and the Settling Parties

Intervenors try to manufacture appellate jurisdiction by arguing that, at the time of the Preliminary Approval Order, the class settlement in this case and previously certified classes had "terminated" or been "abandoned" and thus the Settling Parties and district court are somehow "abrogating" appellate jurisdiction

8

by omitting express certification from the Order.[9]  Grigson's Response at 4-12; Hookses' Response at 3.  These arguments are contrary to the express language of the 2003 certification order, the settlement documents in this case, and the intent of the Settling Parties and the district court—all of which have maintained that the 2003 certification still governs.[10]  In any event, the Settling Parties' agreement could not abrogate the orders and opinions of the district court, this Court, and the Texas Supreme Court.

Under all iterations of the Settlement Agreement, certification of the Settlement Classes can be vacated only "[i]f this Settlement Agreement is terminated pursuant to its terms, or if the Effective Date does not occur for any reason."  Ex. 6 to Grigson's Response, at 8 § III.5; Ex. 13 to Grigson's Response, at 8 § III.5.  Intervenors have not argued that any of these events have occurred,

---

[9] But, contradictorily, Grigson claims earlier in his Response that the certification is "express." *See* Grigson's Response at 2-3.

[10] *See* Ex. 1 to Motion to Dismiss, at 2-3 ¶ 2; Ex. 3 to Motion to Dismiss, Tr. 122-23 (recognizing the Settling Parties' position "that the class was previously certified . . . and that the class has never been decertified," before stating that the district court will enter the Settling Parties' preliminary approval order as presented without any re-certification language).

Grigson's excerpted quote from the September 4, 2014, hearing (Response at 8) mischaracterizes the statements by the district court, which later recognized the updated 2013 settlement as merely a "continuation" of the 2003 settlement and clarified, at the preliminary approval hearing, its intent not to engage in re-certification.  Ex. 1 to Reply, 9/4/2014 Hearing Tr. 58:8-16; *see also id.* at 55-58 (full discussion); Ex. 3 to Motion to Dismiss Grigson's Appeal, Tr. 134:7-18 ("[Y]ou were each trying to spin my prior comments on the record to be a 'oh, we need to recertify this class' from your perspective and 'no we don't' from their perspective. . . . It's going to be the order they've proposed."); Ex. 3 to Reply, 4/29/2014 Hearing Tr. 104 ("We did all of the standards of class certification.  I don't want to redo them.").

9

nor could they. Under the settlement's terms, only the parties to the agreement—and *not* an intervenor like Grigson or the Hookses—have the right to terminate it, and neither Settling Party has exercised that right. *See* Ex. 6 to Grigson's Response, at 14 §§ VII.1, VII.4; Ex. 13 to Grigson's Response, at 15-16 §§ VII.1, VII.4. Indeed, despite a decade of delay and failed appeals by intervenors (including the Hookses and the former client of Grigson's counsel), the Settling Parties have maintained, and only enhanced the benefits in, their agreement. And while the "Effective Date" (or final judgment) has not yet occurred, it can still occur (even if Intervenors prevailed on their baseless appeals). *See* Ex. 6 to Grigson's Response, at 2; Ex. 13 to Grigson's Response, at 2.

Furthermore, the Settlement Agreement in this case expressly allows and contemplates that the Settling Parties would amend and modify the agreement in writing, as the parties have done, without terminating the agreement or certification. *See* Ex. 6 to Grigson's Response, at 17 § X.3; Ex 13 to Grigson's Response, at 18 § X.3. Contrary to Intervenors' assertions (Grigson's Response at 5; Hookses' Response at 3-4), the 2013 Second Amended Settlement Agreement modified the 2003 Settlement Agreement in this case as little as possible, not renegotiating any settlement terms and only bringing the settlement current, but it did not require the parties to re-seek class certification. *See* Ex. 13 to Grigson's Response, at 8 § III.2. And the 2015 Supplement expressly provides that the

Settling Parties have fulfilled the requirement of obtaining class certification, leaving no doubt of their intention that the Second Amended Settlement Agreement and Supplement have no impact on the class definitions as previously certified. Ex. 11 to Grigson's Response at 2 § III**.**

The district court's decision in 2014 not to preliminarily approve the Second Amended Settlement Agreement (that, along with the 2015 Supplement, was just preliminarily approved) also had no effect on certification. *Contra* Grigson's Response at 7. The "termination clause" excerpted by Grigson from the Second Amended Settlement Agreement states only that "[i]n the event that the Court were not to approve and certify the Settlement Classes in all respects as defined in this Settlement Agreement (1) any stipulations and agreements made herein are null and void." Grigson's Response at 7. There can be no question that the district court has certified and the appellate courts have affirmed the Settlement Classes in all respects as they are defined in the current Settlement Agreement. In sum, neither Grigson nor the Hookses have any basis to argue "termination" or "abandonment" of the 2003 certification.[11]

---

[11] Indeed, Intervenors' tortured contractual reading is fundamentally at odds with hornbook contract law. It does not comport with the plain language of the Settlement Agreement; it is contrary to the expressed (and agreed) intent of the parties that signed the Settlement Agreement; and it has been rejected by the district court. In no case of which the Settling Parties are aware are non-signatories to a contract permitted to tell contracting parties that their agreement means something different than what they think and intended it to mean. Certainly, Intervenors cite to no authority for such a breathtaking usurpation of the law of contracts.

Grigson nonetheless brazenly asserts the "complicity of the trial court" in this alleged effort to "abrogate" appellate jurisdiction. Grigson's Response at 12; *see also id.* at 9-12. As evidenced by the voluminous record and colloquy with Grigson's counsel, the district court heard Grigson's and the Hookses' objections, as well as the evidence and arguments presented by the Settling Parties, and ruled against Grigson and the Hookses. *See* Grigson's Response at 10-11. There is nothing complicit about that. Moreover, "a trial court is afforded considerable authority and discretion in . . . decertifying or modifying the class if necessary as the case develops." *Philadelphia Am. Life Ins. Co. v. Turner*, 131 S.W.3d 576, 585 (Tex. App.—Fort Worth 2004, no pet.). None of the Intervenors even moved the district court to invoke that discretion. The July 1-2, 2015, hearing was instead about preliminary approval of the Settlement Agreement. Even if the Preliminary Approval Order "might be wrong . . . [that] does not make it appealable, else all alleged irregularities in a class-action suit would be immediately subject to review." *Bally*, 53 S.W.3d at 355-56. An appeal can be taken from the final judgment if the Settlement Agreement is ultimately approved. But Grigson and the Hookses lack any basis for invoking appellate jurisdiction at this time.

B.     **The District Court's Preliminary Approval Order Did Not Fundamentally Change the Nature of the Settlement Classes**

Grigson and the Hookses also claim that this Court has appellate jurisdiction over the Preliminary Approval Order even if the Order says nothing about

12

certification. Grigson's Response at 12; Hookses' Response at 9-10. The only case they cite for that proposition, *Phillips Petroleum Co. v. Yarbrough*, 405 S.W.3d 70 (Tex. 2013), fails to support their argument. *Phillips* and the earlier case that it relies on, *De Los Santos v. Occidental Chemical Corp.*, 933 S.W.2d 493 (Tex. 1996) (per curiam), stand only for the "narrow" proposition that an order, with no express certification, is appealable only if "it alters the fundamental nature of the class." *Id.* at 494; *Phillips*, 405 S.W.3d at 76.

In *De Los Santos*, after the district court previously certified a litigated opt-out class, the parties settled and the class counsel, contrary to its previous position, agreed to turn the opt-out class into a mandatory class, which the district court then certified. 933 S.W.2d at 494. The Texas Supreme Court ruled that that specific order was subject to an interlocutory appeal because "[c]hanging a class from opt-out to mandatory does not simply enlarge its membership; it alters the fundamental nature of the class." *Id.* at 494. The Texas Supreme Court has since construed *De Los Santos* as a "narrow ruling" that only covers orders that fundamentally alter class certification. *Bally*, 53 S.W.3d at 355-56; *see also Tana Oil & Gas Corp. v. Cernosek*, No. 03-02-00096-CV, 2002 WL 536308, at *1 (Tex. App.—Austin Apr. 11, 2002, no pet.) (dismissing appeal for lack of jurisdiction where there was "no fundamental change in the class certification order"); *Garza*, 94 S.W.3d at 328 ("[A]n order that merely alters attributes of a class and does not affect the

13

underlying certification of the action as a class action is not an order subject to interlocutory appeal under article 51.014(a)(3).").

In *Phillips*, the Texas Supreme Court once again emphasized that the "ruling in *De Los Santos* is narrow." *Phillips*, 405 S.W.3d at 76. In that case, involving a litigated class action, the class representative amended her petition after class certification to add a new claim; the defendant moved for a ruling to preclude adding the new claim as part of the class and for a new certification hearing, which the district court denied. *Id.* at 72. The Texas Supreme Court found, for that narrow circumstance, that appellate jurisdiction existed because the district court's order "changed the fundamental nature of the class in allowing the addition of the claim." *Id.* at 80.

Grigson and the Hookses have failed to, and could not, demonstrate that the Preliminary Approval Order in this case has changed or altered "the ***fundamental nature*** of the class[es]" that were previously certified by the district court in 2003 and affirmed by this Court and the Texas Supreme Court. *De Los Santos*, 933 S.W.2d at 494 (emphasis added). The class definitions or structure have not been changed ***in any way***. Unlike *Phillips* and *De Los Santos*, there has been no change from opt-out to mandatory. Nor has any new claim been added. Instead, while the Settling Parties updated their settlement in 2013 and 2015, they did not change the nature of the classes or the claims settled, and the class definitions and

14

fundamental settlement structure in this case have remained exactly the same since the 2003 certification order that was affirmed by this Court in 2009. *See* Ex. 13 to Grigson's Response, at 5; *Lubin v. Farmers Grp., Inc.*, No. 03-03-00374-CV, 2009 WL 3682602 (Tex. App.—Austin Nov. 6, 2009, no pet.).[12]

Grigson's and the Hookses' arguments in their Responses instead target either the Settling Parties' **maintenance** of settlement terms, entered into and preliminarily approved in 2003, or issues that are irrelevant to certification and settlement approval or that pertain only to preliminary approval of the settlement's terms—**none** of which are appealable at this time:

- Intervenors both complain about the State's decision, as class counsel, to maintain the original settlement term that undistributed settlement proceeds will go to the Texas Unclaimed Property fund. This is a baseless challenge to a settlement term that not only existed in 2003 but cannot, under Texas law, be appealed at this time;[13]

- Intervenors allege that the Settling Parties, by cooperating in post-settlement efforts (as settling parties do), have somehow participated in "collusion." Once again, they lack any basis for that serious accusation,[14] which, as shown above, is not appealable at this time;

---

[12] These and other facts are also in the personal knowledge of the undersigned, and so, no affidavit in support is needed. TEX. R. APP. P. 10.2.

[13] *See Cortez*, 66 S.W.3d at 234 (at preliminary approval, "the proposed settlement's terms do not affect the parties or the proceedings, and appellate review is premature"). This challenge and its erroneous citation to the *Highland Homes v. State* case were also fully refuted by the Texas Commissioner of Insurance, David Mattax, at the July 1, 2015, preliminary approval hearing. Ex. 2 to Reply, Tr. 94:17-96:11, 137:7-138:4, 234:11-236:18; *see also id.* at 71:7-74:2.

[14] As the Supreme Court has made clear, the question of "collusion" turns on whether or not the settlement was "negotiated at arms' length." *Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 955

15

- Grigson's cursory and groundless objection to the joint representation of the Farmers Parties by their counsel of 13 years, from 2002 to the present, is irrelevant to the settlement and does not transform the Preliminary Approval Order into an appealable order;[15]

- Grigson asserts a frivolous "ex parte" allegation, related to his denied Motion to Disqualify, that is not only grounded in no law or facts but is irrelevant to certification and the settlement;[16]

- The Hookses claim, without any actual evidence, that class membership has changed because a "quarter" of class members "have likely expired" or died. Even if true, the certified classes are still the same, as previously recognized by the district court and even the Hookses' counsel.[17] In any event, Texas law is clear that modification of class size (which was not even done in the Preliminary Approval Order) does *not* give rise to an interlocutory appeal;[18] and

---

(Tex. 1996). Intervenors do not challenge the negotiation of any settlement terms but merely challenge the Settling Parties' decision to stick with the law of the case. That is not collusion.

[15] *See Garza*, 94 S.W.3d at 329 ("[The Texas Supreme Court] did not hold . . . that a conflict of interest alone, even if one is created, transforms an order that is not otherwise subject to interlocutory appeal into one that is."). In any event, this "conflict" allegation was fully heard and rejected by the district court in December 2014 when it refused to grant Grigson's baseless Motion to Disqualify opposing counsel, filed in September 2014 (12 years after the joint representation started) and joined in by the Hookses. Grigson and the Hookses have never sought a writ of mandamus from that ruling, and now it is far too late.

[16] With no evidence whatsoever, Grigson continues to make the extraordinary claim that the mediator in this case, former Judge Patrick Keel, who presided over a mediation that Grigson refused to participate in, improperly contacted the district court at the Settling Parties' request; this allegation was refuted by mediator Keel in his testimony at the July 1, 2015, preliminary approval hearing. Ex. 2 to Reply, Tr. 59:19-60:8.

[17] When the Hookses previously made this same argument, the district court rejected it and explained, "Whether they died or divorced or remarried or whatever, it's still the same group of people"; in response, the Hookses' counsel conceded, "Well, in the abstract, the definition is still the *same* definition." Ex. 3 to Reply, 4/29/2014 Hearing Tr. 103 (emphasis added). The Hookses also previously claimed in 2014, again with no evidence, that "10 percent or so" of class members had died, so their "death" figure has more than doubled in just a year. *Id.* at 102.

[18] *Bally*, 53 S.W.3d at 355 ("[T]he statute does not authorize an appeal of an order merely enlarging the size of a class or an order modifying a class's definition."); *Garza*, 94 S.W.3d at 328 ("[A] trial court's exercise of its continuing power to alter or amend the nature of an existing

- The Hookses cite several settlement updates (the enhancement of $10 million in settlement funds to class members, a carve-out in the released claims, and elimination of the State's attorneys' fees)—but fail to explain how those updates alter the fundamental nature of the Settlement *Classes*—as opposed to the Settlement *Agreement*. The updates are preliminarily approved settlement terms that cannot be appealed at this time.

*See* Grigson's Response at 12-14; Hookses' Response at 4-9.

In short, Grigson and the Hookses have no basis to argue, under *De Los Santos*, *Phillips*, or any other Texas authority, that they can take an appeal from a Preliminary Approval Order that effects no change to any aspect of the previously certified classes. This Court therefore lacks appellate jurisdiction to and cannot reach the merits of Grigson's and the Hookses' challenges to the terms of the settlement until after a final judgment is signed.[19]

### III. A Stay of Class Notice Is Unwarranted and Would Be Unnecessary and Unfair to the Other Class Members

A stay of the sending of class notice is not required or supported by any legal, factual, or equitable basis, as demonstrated in the Appellees' Joint Response to Appellant Grigson's Emergency Motion to Stay the Sending of Class Notice ("Joint Response to Stay Motion"), which is incorporated here by reference.

---

certified class by an order increasing its size does not 'certify or refuse to certify a class' for purposes of an interlocutory appeal.").

[19] In stark contrast to the evidence cited by the Settling Parties, Grigson and the Hookses cite no evidence from the record to support any of their allegations. This utter lack of evidence is particularly egregious given the severity of the baseless allegations they have lodged against the district court, the mediator, and the Settling Parties and their counsel in this case.

17

First, in his Response, Grigson offers no legal authority for his argument (which was not even raised in his Stay Motion) that class notice is somehow automatically stayed in this case. Instead, as demonstrated above, because Grigson has no basis for invoking the Court's interlocutory appellate jurisdiction, he has no basis for staying any proceeding in the district court—whether automatic or discretionary.

Second, as refuted in the Joint Response to the Stay Motion, sending class notice as currently scheduled would not notify the class "of a hearing that cannot happen," nor will it interfere with the appellate process. *See* Grigson's Response at 14-15; Joint Response to Stay Motion at 3-5. There is no appellate jurisdiction to be interfered with but, even if there were, no interference would occur. Under the Preliminary Approval Order and the Class Notice in this case, staying class notice is unnecessary even if the final hearing in this case cannot occur as scheduled because both documents contemplate that possibility and inform potential class members of it. Ex. 1 to Motion to Dismiss Grigson's Appeal, at 9, ¶ 15; Ex. 1 to Motion to Dismiss Grigson's Appeal, at Ex. 1 (Class Notice), at 9 ¶ 21. The result would therefore be the same as any other case where a hearing date needed to be moved; there is nothing "absurd" about that common occurrence.

Third, Grigson's claim that the Court should grant a stay in 2015 because it granted a stay in 2003 is unavailing. In 2003, the appeal concerned the district

court's express certification decision, and the primary issue before the Court then was whether the State could bring and certify this class action at all. *See Lubin*, 222 S.W.3d at 420. Today's circumstances are entirely different, particularly given the long appellate history of this case, warranting a different result. The fact that the district court's class certification decision has already been the subject of a full round of appellate review is a reason ***against*** staying notice now, not, as Grigson seems to think, a reason in favor of yet further delay.

Finally, class notice will not impose any "irreparable" harm on class members. *See* Grigson's Response at 15-16. As well-chronicled in the annals of this case, the district court performed the required analysis and scrutiny in 2003 when it certified the Settlement Classes in this case that, to this day, have remained fundamentally the same. *See* Hookses' Response at 8 ("[H]eightened scrutiny is required to protect the absent class members. The trial court did this in 2003."). And as established with evidentiary support in the Joint Response to Stay Motion, class notice will not be paid by "policyholders' own money" and will not harm policyholders who are class members in any way. Joint Response at Stay Motion, at 6-7 & Exs. 1-3. Grigson, on the other hand, despite being apprised of the Settling Parties' arguments and presentation of evidence, has yet to produce ***any*** evidence to support his conclusory allegation of harm.

19

It is instead Grigson's and the Hookses' improperly attempted interlocutory appeals and Grigson's Stay Motion that will harm the approximately 1.8 million class members who have effectively been shut out of the settlement approval process for the past 12 years. No more delay should be allowed. Grigson and the Hookses had the full opportunity to participate in a full-blown preliminary approval hearing (the second for the Hookses and Grigson's counsel), and they failed in their opposition—a failure that is not appealable. The other absent class members are entitled to be informed of the preliminarily approved settlement as soon as practicable.

## CONCLUSION AND PRAYER

For these reasons and those stated in their Joint Motions to Dismiss for Lack of Appellate Jurisdiction, the Settling Parties request that the Court: (i) expedite consideration of their requests; (ii) grant the Appellees' Joint Motions to Dismiss Intervenors Grigson's and the Hookses' Appeals for Lack of Appellate Jurisdiction; (iii) dismiss the two appeals; and (iv) grant such other and further relief to which the Appellees are entitled.

Date: August 12, 2015        Respectfully submitted,

/s/ *M. Scott Incerto*
Marcy Hogan Greer
State Bar No. 08417650
mgreer@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701-3562
Telephone: (512) 482-9300
Facsimile: (512) 482-9303

M. Scott Incerto
State Bar No. 10388950
scott.incerto@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: 512-474-5201
Telecopier: 512-536-4598

Darryl W. Anderson
State Bar No. 24008694
darryl.anderson@nortonrosefulbright.com
Geraldine W. Young
State Bar No. 24084134
geraldine.young@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010 3095
Telephone: 713 651 5151
Telecopier: 713 651 5246

**ATTORNEYS FOR DEFENDANTS-APPELLEES FIRE UNDERWRITERS ASSOCIATION, FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION, FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, TEXAS FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, MID-CENTURY INSURANCE COMPANY, FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND TRUCK UNDERWRITERS ASSOCIATION**

21

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ROBERT O'KEEFE
Division Chief
Financial Litigation, Tax, and Charitable Trusts Division

 /s/  *Joshua R. Godbey*
JOSHUA R. GODBEY
Assistant Attorney General
LEAD ATTORNEY
State Bar No. 24049996
Telephone: (512) 475-4209
joshua.godbey@texasattorneygeneral.gov
RYAN S. MINDELL
Assistant Attorney General
State Bar No. 24089707
Telephone: (512) 936-1721
ryan.mindell@texasattorneygeneral.gov
JENNIFER S. JACKSON
Assistant Attorney General
State Bar No. 24060004
Telephone: (512) 463-9917
jennifer.jackson@texasattorneygeneral.gov
Financial Litigation, Tax, and Charitable Trusts Division
P.O. Box 12548
Austin, Texas  78711-2548
Fax: (512) 477-2348)

ATTORNEYS FOR PLAINTIFFS-APPELLEES, THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, AND THE TEXAS COMMISSIONER OF INSURANCE

22

**CERTIFICATE OF SERVICE**

On August 12, 2015, I electronically filed the Appellees' Reply in Further Support of Joint Motions to Dismiss Appellants Grigson's and the Hookses' Appeals for Lack of Appellate Jurisdiction with the Clerk of the Court using the eFile.TXCourts.gov electronic filing system which will send notification of such filing to the following (unless otherwise noted below).

Joe K. Longley
Philip K. Maxwell
1609 Shoal Creek Blvd. # 100
Austin, TX 78701
Joe@JoeLongley.com
phil@philmaxwell.com

*Counsel for Appellant Charles O. "Chuck" Grigson*

Joseph C. Blanks
P.O. Box 999
Doucette, TX 75942
blanxlex@gmail.com

*Counsel for Appellants Gerald and Lesly Hooks*

Michael J. Woods
8620 N. New Braunfels, Ste. 522
San Antonio, TX 78217
MichaelJWoods@sbcglobal.net

*Pro Se Intervenor/Objector*

/s/ *M. Scott Incerto*
M. Scott Incerto

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4(i)**

I certify that the foregoing document contains 6,966 words and complies with the word limit set forth in Texas Rule of Appellate Procedure 9.4(i).

/s/ *M. Scott Incerto*
*M. Scott Incerto*

No. 03-15-00436-CV

**In the Third Court of Appeals**
**Austin, Texas**

**CHARLES O. "CHUCK" GRIGSON,**
**GERALD HOOKS, AND LESLIE HOOKS,**
*Appellants,*

**v.**

**THE STATE OF TEXAS; THE TEXAS DEPARTMENT OF**
**INSURANCE; THE TEXAS COMMISSIONER OF INSURANCE;**
**and FARMERS GROUP, INC. ET AL.,**
*Appellees.*

On Appeal from the 261st Judicial District Court
Travis County, Texas
Cause No. D-1-GV-02-002501

**APPENDIX TO**

**APPELLEES' REPLY IN FURTHER SUPPORT OF JOINT MOTIONS**
**TO DISMISS APPELLANTS GRIGSON'S AND THE HOOKSES'**
**APPEALS FOR LACK OF APPELLATE JURISDICTION**

**Exhibit 1**       Transcript Excerpts from the September 4, 2014, Hearing on
                    Motions to Strike and Motion to Lift Stay on Discovery

**Exhibit 2**       Transcript Excerpts from the July 1, 2015, Hearing on Joint
                    Motion for Preliminary Approval

**Exhibit 3**       Transcript Excerpts from the April 29, 2014, Hearing on
                    Preliminary Approval

# Exhibit 1

**TO APPELLEES' REPLY IN FURTHER SUPPORT OF
JOINT MOTIONS TO DISMISS APPELLANTS GRIGSON'S AND THE
HOOKSES' APPEALS FOR LACK OF APPELLATE JURISDICTION**

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. D-1-GV-02-002501

STATE OF TEXAS, THE TEXAS ) IN THE DISTRICT COURT
DEPARTMENT OF INSURANCE, )
AND THE TEXAS )
COMMISSIONER OF )
INSURANCE, )
      Plaintiffs, )
)
VS. )
)
)
FARMERS GROUP, INC., )
FARMERS UNDERWRITERS ) TRAVIS COUNTY, TEXAS
ASSOCIATION, FIRE )
UNDERWRITERS ASSOCIATION, )
FARMERS INSURANCE )
EXCHANGE, FIRE INSURANCE )
EXCHANGE, TEXAS FARMERS )
INSURANCE COMPANY, )
MID-CENTURY INSURANCE )
COMPANY OF TEXAS, AND )
FARMERS TEXAS COUNTY )
MUTUAL INSURANCE COMPANY, )
      Defendants. ) 261ST JUDICIAL DISTRICT

-------------------------------------------------------

HEARING ON MOTIONS TO STRIKE
AND MOTION TO LIFT STAY ON DISCOVERY

-------------------------------------------------------

On the 4th day of September, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Scott H. Jenkins, Judge presiding, held in Austin, Travis County, Texas;

Proceedings reported by machine shorthand.

**A P P E A R A N C E S**

FOR THE PLAINTIFFS, THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, AND THE TEXAS COMMISSIONER OF INSURANCE:

    DAVID C. MATTAX
    SBOT NO. 13201600
    Deputy Attorney General for Defense Litigation
    JOSHUA GODBEY
    SBOT NO. 24049996
    Assistant Attorney General
    OFFICE OF THE ATTORNEY GENERAL
    P.O. Box 12548
    Austin, Texas  78711-2548
    (512) 463-0150


FOR DEFENDANTS FIRE UNDERWRITERS ASSOCIATION, FARMERS GROUP, INC., FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, TEXAS FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, MID-CENTURY INSURANCE COMPANY, FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND TRUCK UNDERWRITERS ASSOCIATION:

    RICHARD N. CARRELL
    SBOT NO. 03871000
    LAYNE KRUSE
    SBOT NO. 11742550
    DARRYL ANDERSON
    SBOT NO. 24008694
    FULBRIGHT & JAWORSKI
    1301 McKinney, Suite 5100
    Houston, Texas  77010-3095
    (713) 651-5151

    M. SCOTT INCERTO
    SBOT NO. 10388950
    FULBRIGHT & JAWORSKI
    98 San Jacinto Boulevard, Suite 1100
    Austin, Texas  78701
    (512) 474-5201

**A P P E A R A N C E S**
**(CONTINUED)**

MARCY HOGAN GREER
SBOT NO. 08417650
ALEXANDER, DUBOSE, JEFFERSON & TOWNSEND
515 Congress Avenue, Suite 2350
Austin, Texas  78701
(512) 482-9300

FOR INTERVENORS GERALD HOOKS AND LESLY HOOKS:

JOSEPH BLANKS
SBOT NO. 02456770
LAW OFFICE OF JOSEPH C. BLANKS
P.O. Box 999
Doucette, Texas  75942
(409) 837-9707

FOR INTERVENOR MICHAEL J. WOODS:

MICHAEL J. WOODS, PRO SE
8620 N. New Braunfels #522
San Antonio, Texas  78217
(210) 822-1560

**A P P E A R A N C E S**
**(CONTINUED)**


FOR INTERVENOR CHARLES O. "CHUCK" GRIGSON:

    JOE K. LONGLEY
    SBOT NO. 12542000
    LAW OFFICE OF JOE K. LONGLEY
    1609 Shoal Creek Boulevard, Suite 100
    Austin, Texas  78701
    (512) 477-4444

    PHILIP K. MAXWELL
    SBOT NO. 13254000
    LAW OFFICE OF PHILIP K. MAXWELL
    1609 Shoal Creek Boulevard, Suite 100
    Austin, Texas  78701
    (512) 947-5434

**I N D E X**

**VOLUME 1**

**HEARING ON MOTIONS TO STRIKE**

**AND MOTION TO LIFT STAY ON DISCOVERY**

**SEPTEMBER 4, 2014**

| | <u>Page</u> | <u>Vol.</u> |
|---|---|---|
| Announcements............................ | 8 | 1 |
| **MOTION TO STRIKE INTERVENTION OF WOODS** | | |
| Argument by Mr. Incerto.................. | 15 | 1 |
| Argument by Mr. Woods.................... | 25 | 1 |
| Further Argument by Mr. Incerto.......... | 29 | 1 |
| **MOTION TO STRIKE INTERVENTION OF GRIGSON** | | |
| Argument by Mr. Incerto.................. | 30 | 1 |
| Argument by Mr. Longley.................. | 39 | 1 |
| Further Argument by Mr. Incerto.......... | 54 | 1 |
| Comments by Mr. Mattax................... | 60 | 1 |
| Court's Ruling.......................... | 73 | 1 |
| Adjournment.............................. | 101 | 1 |
| Court Reporter's Certificate............. | 102 | 1 |

judgment on the settlement that went up through appeals. That has not occurred at this point. This language was brought forward and, you know --

THE COURT: What am I to make of the language farther up the page, though, that he didn't cite, Farmers parties do not agree to certification of the settlement classes for any purpose other than to effectuate this settlement agreement?

Well, I haven't approved this settlement agreement. In fact, I rejected it. So you are now in a posture where you don't agree with the class action. And in fact, you were the party who wanted the class action 12 years ago. So it seems to me we're back at square one with no settlement agreement, no certified class, because no party -- I mean, you were the party who asked for it, and now you don't agree to it, according to your own signed document, and the State really wasn't the one who asked for it to begin with. So what am I to make of all that?

MR. INCERTO: Well, I have to respectfully disagree with the Court's analysis on that. I think we do have a class action. I believe it's law in the case from the Supreme Court. I believe that this particular provision --

THE COURT: Well, then is this just

gratuitous? You put it in this -- this is the one you signed, and you put it as part of your motion filed in August of 2013 that you wanted me to read and consider to approve the settlement and to approve -- well, to approve the settlement, get preliminary approval. Now that I have declined to do that, I mean, this is the language that you kept in there. And you obviously gave it a lot of attention because I looked at the changes you made.

MR. INCERTO: Your Honor, we tried to change as little as possible and carried forward everything from the prior agreement except what absolutely needed to be changed because of I said the problem with the credit notice -- credit reports not being --

THE COURT: Well, does that mean if I decline to approve a settlement, this settlement, and you're now going to litigate it -- because I went back and read what now Justice Boyd said at the time when he was a witness, we'll have to decide how to structure this trial in this case. In other words, you are agreeing to a class action trial or not?

MR. INCERTO: No, Your Honor. We agreed for purposes of this settlement agreement --

THE COURT: Exactly.

MR. INCERTO: -- if this Court denies the preliminary approval.

THE COURT: Exactly. Since I've denied it, it seems to me now there's no agreement. I've got the State who didn't want to do it -- didn't ask to do it to begin with, Farmers who wanted to do it because they wanted to effectuate a settlement, and now the Court has declined to approve the settlement. I'm just thinking that that language is significant. You don't think that it is, apparently.

MR. INCERTO: Your Honor, I don't think the Court has denied preliminary approval. There's no order denying preliminary approval of the current settlement agreement. The Court has expressed some concerns and some issues --

THE COURT: Well, actually, that's what we started off with at this hearing. I thought I was pretty clear on April 29th I'm declining to approve the second amended settlement agreement. I thought that was pretty clear, and I thought that you and I had that sort of meeting of the minds at the beginning of this hearing, but I guess if I wasn't clear, I'm hopefully clear now. So what does that mean?

MR. INCERTO: Well, Your Honor, what it means is we've got -- we've -- the parties have been

working on a settlement agreement that we believe addresses the issues that the Court has outlined.

THE COURT: And that's because you knew I was refusing to approve this and so you worked on a new one. You've been working since then on a new one.

MR. INCERTO: We've been working on a new one.

THE COURT: And that makes perfect sense. I thought you would. And so it comes back to this line here, since I did not approve -- effectuate this settlement agreement, I didn't approve it -- I guess you're saying we're still trying to effectuate it. This will be the third amended, and therefore, that's sort of a continuation of our effort, and as long as we can enter into a settlement agreement, we're still agreeing to class action, but in no other circumstances.

MR. INCERTO: That's correct.

THE COURT: All right. I get it.

MR. INCERTO: Your Honor, let me address some of the other arguments that were made and starting with this one. Mr. Grigson wants to talk about investor meetings and who's going to pay. It's simply like I said in my opening remarks. They want to talk about the merits of the issues they raise before they establish -- and frankly in lieu of establishing that they have a

**REPORTER'S CERTIFICATE**

THE STATE OF TEXAS   )

COUNTY OF TRAVIS     )

I, Chavela V. Crain, Official Court Reporter in and for the 53rd District Court of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered in evidence by the respective parties.

WITNESS MY OFFICIAL HAND this the 10th day of September, 2014.

*/s/ Chavela V. Crain*
Chavela V. Crain
Texas CSR 3064, RMR, CRR
Expiration Date:  12/31/2015
Official Court Reporter
53rd District Court
Travis County, Texas
P.O. Box 1748
Austin, Texas 78767
(512) 854-9322

*

# Exhibit 2

**TO APPELLEES' REPLY IN FURTHER SUPPORT OF
JOINT MOTIONS TO DISMISS APPELLANTS GRIGSON'S AND THE
HOOKSES' APPEALS FOR LACK OF APPELLATE JURISDICTION**

REPORTER'S RECORD
VOLUME 1 OF 2 VOLUMES
TRIAL COURT CAUSE NO. D-1-GV-02-002501

STATE OF TEXAS, THE TEXAS  ) IN THE DISTRICT COURT
DEPARTMENT OF INSURANCE,    )
AND THE TEXAS               )
COMMISSIONER OF             )
INSURANCE,                  )
          Plaintiffs,       )
                            )
VS.                         )
                            )
                            )
FARMERS GROUP, INC.,        )
FARMERS UNDERWRITERS        ) TRAVIS COUNTY, TEXAS
ASSOCIATION, FIRE           )
UNDERWRITERS ASSOCIATION,   )
FARMERS INSURANCE           )
EXCHANGE, FIRE INSURANCE    )
EXCHANGE, TEXAS FARMERS     )
INSURANCE COMPANY,          )
MID-CENTURY INSURANCE       )
COMPANY OF TEXAS, AND       )
FARMERS TEXAS COUNTY        )
MUTUAL INSURANCE COMPANY,   )
          Defendants.       ) 261ST JUDICIAL DISTRICT

-----------------------------------------------------

HEARING ON JOINT MOTION FOR
PRELIMINARY APPROVAL OF SECOND AMENDED
SETTLEMENT AGREEMENT

-----------------------------------------------------

On the 1st day of July, 2015, the following

proceedings came on to be heard in the above-entitled

and numbered cause before the Honorable Scott H.

Jenkins, Judge presiding, held in Austin, Travis County,

Texas;

Proceedings reported by machine shorthand.

**A P P E A R A N C E S**

FOR THE PLAINTIFFS, THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, AND THE TEXAS COMMISSIONER OF INSURANCE:

    JOSHUA GODBEY
    SBOT NO. 24049996
    RYAN MINDELL
    SBOT NO. 24089707
    JENNIFER JACKSON
    SBOT NO. 24060004
    Assistant Attorney General
    OFFICE OF THE ATTORNEY GENERAL
    P.O. Box 12548
    Austin, Texas  78711-2548
    (512) 475-4209


FOR DEFENDANTS FIRE UNDERWRITERS ASSOCIATION, FARMERS GROUP, INC., FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, TEXAS FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, MID-CENTURY INSURANCE COMPANY, FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND TRUCK UNDERWRITERS ASSOCIATION:

    M. SCOTT INCERTO
    SBOT NO. 10388950
    NORTON ROSE FULBRIGHT
    98 San Jacinto Boulevard, Suite 1100
    Austin, Texas  78701
    (512) 474-5201

    DARRYL ANDERSON
    SBOT NO. 24008694
    NORTON ROSE FULBRIGHT
    1301 McKinney, Suite 5100
    Houston, Texas  77010-3095
    (713) 651-5151

    MARCY HOGAN GREER
    SBOT NO. 08417650
    ALEXANDER, DUBOSE, JEFFERSON & TOWNSEND
    515 Congress Avenue, Suite 2350
    Austin, Texas  78701
    (512) 482-9300

**A P P E A R A N C E S**
**(CONTINUED)**


FOR INTERVENORS GERALD HOOKS AND LESLY HOOKS:

     JOSEPH BLANKS
     SBOT NO. 02456770
     LAW OFFICE OF JOSEPH C. BLANKS
     P.O. Box 999
     Doucette, Texas  75942
     (409) 837-9707


FOR INTERVENOR MICHAEL J. WOODS:

     MICHAEL J. WOODS, PRO SE
     8620 N. New Braunfels #522
     San Antonio, Texas  78217
     (210) 822-1560


FOR INTERVENOR CHARLES O. "CHUCK" GRIGSON:

     JOE K. LONGLEY
     SBOT NO. 12542000
     LAW OFFICE OF JOE K. LONGLEY
     1609 Shoal Creek Boulevard, Suite 100
     Austin, Texas  78701
     (512) 477-4444

     PHILIP K. MAXWELL
     SBOT NO. 13254000
     LAW OFFICE OF PHILIP K. MAXWELL
     1609 Shoal Creek Boulevard, Suite 100
     Austin, Texas  78701
     (512) 947-5434

**I N D E X**

**VOLUME 1**

**HEARING ON JOINT MOTION FOR
PRELIMINARY APPROVAL OF SECOND AMENDED
SETTLEMENT AGREEMENT**

**JULY 1, 2015**

| | Page | Vol. |
|---|---|---|
| Announcements............................ | 25 | 1 |

**INTERVENOR GRIGSON'S WITNESSES**

| | Direct | Cross | Vol. |
|---|---|---|---|
| PATRICK KEEL<br>    By Mr. Maxwell | 33 | | 1 |

| | Page | Vol. |
|---|---|---|
| Opening Statement by Mr. Godbey.......... | 60 | 1 |
| Opening Statement by Mr. Woods........... | 78 | 1 |

**PLAINTIFF STATE'S WITNESSES**

| | Direct | Cross | Vol. |
|---|---|---|---|
| DAVID MATTAX | | | |
|     By Mr. Godbey | 83 | | 1 |
|     By Mr. Incerto | | 99 | 1 |
|     By Mr. Longley | | 106 | 1 |

**I N D E X**
**VOLUME 1 - CONTINUED**

**HEARING ON JOINT MOTION FOR**
**PRELIMINARY APPROVAL OF SECOND AMENDED**
**SETTLEMENT AGREEMENT**

**JULY 1, 2015**

**DEFENDANT FARMERS' WITNESSES**

|  | Direct | Cross | Vol. |
|---|---|---|---|
| SHANNON WHEATMAN | | | |
| By Ms. Greer | 160 | | 1 |
| By Mr. Maxwell | | 174 | 1 |
| By Mr. Blanks | | 189 | 1 |
| By Ms. Greer | 200 | | 1 |
| By Mr. Maxwell | | 202 | 1 |
| By Mr. Blanks | | 217 | 1 |

**PLAINTIFF STATE'S WITNESSES**

|  | Direct | Cross | Vol. |
|---|---|---|---|
| DAVID MATTAX (CONTINUED) | | | |
| By Mr. Longley | | 219 | 1 |
| By Mr. Blanks | | 252 | 1 |
| By Mr. Woods | | 266 | 1 |
| By Mr. Incerto | | 283 | 1 |
| By Mr. Longley | | 290 | 1 |
| By Mr. Woods | | 295 | 1 |

|  | Page | Vol. |
|---|---|---|
| Adjournment.............................. | 300 | 1 |
| Court Reporter's Certificate.............. | 301 | 1 |

he may have had information he learned about this case, you may.  I mean, I don't know.

Q.    (BY MR. MAXWELL)  Did you have any other communication in which you learned things about this case?

A.    When?

Q.    At any time.

A.    I read about the case in the newspaper about ten years ago, as I recall.

Q.    All right.  Nothing else?

A.    Not to my recollection.

Q.    You've read of Judge Jenkins' recollection of this conversation as contained in the transcripts, haven't you?

A.    I have.

Q.    And do you agree with those?

A.    I do.

Q.    All right.  Well, just housekeeping, Mr. Longley never gave you any authority to contact the Court, did he?

A.    Mr. Longley didn't participate in the mediation, so no, he did not.

Q.    All right.  And you realize that it was an ex parte contact?

THE COURT:  I'm sorry.  I couldn't --

Q.    (BY MR. MAXWELL)  You realize it was an ex parte contact with the Court, correct?

A.    Mr. Maxwell, I don't agree with that.  I do not believe it is an ex parte communication when a party chooses not to participate in a mediation and the mediator gets the permission of the parties who do participate to communicate with the Court.  It never occurred to me that that would be considered ex parte.

Q.    Well, you have read the motion with regard to having you testify, correct?  In other words, my response to the motion to quash, you've seen that, haven't you?

A.    I have.

Q.    And you have seen the revisions that I have quoted in the material?

A.    I have.

Q.    And that anything -- that any communication with the Court where not all parties to the court proceedings are present is an ex parte contact; you understand that, don't you?

A.    I do understand your argument.

Q.    Well, the mediation statute doesn't talk about ex parte, does it?

A.    I don't believe the term ex parte appears in the statute.

THE REPORTER: Getting this deal what?

MR. GODBEY: Getting this deal forward. Sorry. When the mold acts up --

THE COURT: Just keep the pace slow and it solves everything.

MR. GODBEY: Exactly, Your Honor. Your Honor, *Highland Homes* isn't controlling on the decision to preliminarily approve this settlement in this case either. *Highland Homes* very clearly -- the decision in *Highland Homes* very clearly says at the beginning of the discussion that in that case the Unclaimed Property Act does not apply in that circumstance. And to be clear, the circumstance of the settlement in the *Highland Homes* case involved a settlement with checks that would go out. The checks were valid for 90 days at which point they become void and then they would be cy pres to The Nature Conservancy.

So in the *Highland Homes* case they never had to address Chapter 73 of the Property Code, which is money that's held by financial institutions, because in the *Highland Homes* case it was held by financial institutions for 90 days and then it went out in cy pres to The Nature Conservancy.

In our case we have no such provision that

voids out the checks or any such provision that transfers money cy pres to a charitable institution. So Chapter 73 of the Property Code becomes operative in our case where it was not operative in the *Highland Homes* decision.

The money will be transferred to the settlement administrator. The settlement administrator will, of course, put that money in their bank and checks will be sent out. Those checks will be good. The settlement money will remain in the bank account and at which point Chapter 73.002 and 73.102 of the Property Code become operative. The bank will be a depository under 002 of that statute, which means they are subject to the Unclaimed Property Act. And 102 provides the checks that are cut that have not been cashed for three years are presumed abandoned under the Unclaimed Property Act. That's the difference between us and the *Highland Homes* decision, because these checks will live out there for three years, which will allow them to become presumed abandoned by the Unclaimed Property Act and delivered to the comptroller so that they can then be claimed by absent class members down the road.

Furthermore, *Highland Homes* is really fundamentally about the discretion of the class representatives and the class counsel to make decisions

that they feel are in the best interest of the class as a whole. And what we feel is in the best interest of the class as a whole, it's the same thing that we felt in 2003 when the provision -- the unclaimed property provision was put in the settlement agreement. It was never objected to at the time as being in any way unfair to the class members. We feel the Unclaimed Property Act is the best.

A narrow reading of the *Highland Homes* decision that's being advanced by the intervenors in this case would allow for a class action structure where you could never return funds to absent class members who don't request those funds in a very narrow window like the 90-day window. You would be forced under that decision to either cy pres the funds, which would not benefit absent class members who don't fall into that narrow window, or the settling parties would be forced to pro rata out the funds to the class members who do make claims or are easily found, which, of course, would harm absent class members and could also, depending on the structure of the settlement, prove to be a windfall for those class members who do assert claims or do have current addresses. The other option would be to revert the money back to the party defendant, which as Your Honor well knows is highly disfavored in class

action jurisprudence and really what is -- the argument that has been --

THE COURT: You were here yesterday in yesterday's hearing.

MR. GODBEY: Yes, Your Honor.

THE COURT: You heard that Mr. Maxwell was suggesting that very thing. I believe that's what he was suggesting. He'll let us know in a minute. Just leave the money in the Exchanges. Did you hear that?

MR. GODBEY: I did, Your Honor.

THE COURT: Okay. That's where you're going now. I thought you might.

MR. GODBEY: Yes, Your Honor. And so not only is that reverting money to a party defendant, which is highly disfavored, but it also does not benefit the class as a whole. As has been argued, the class -- the members of the class are not all current Farmers policyholders anymore just by the passage of time.

THE COURT: He was suggesting I think yesterday that they hold the money and just keep paying it out over time whenever these claimants appear years later, "I would like my money now, Exchange; please pay me," I guess. That seems to be what he was saying yesterday, but it was -- it was somewhat cryptic, but that seemed to be the suggestion. Did you pick up on

Commissioner Karina Casari's testimony, they were actually claiming --

THE COURT: Slow that down a little bit. Deputy Commissioner --

THE WITNESS: Oh, I'm sorry. Deputy Commissioner Karina, K-a-r-i-n-a, Casari, K[sic]-a-s-a-r-i.

I did go back and read her testimony in preparation for this hearing, and she reminded me that at the time Farmers was claiming that this was a politically charged trumped-up lawsuit at the time that had no basis in law or fact. And so I think the fact that we were able to, through some very difficult negotiations in 2002, provide a lot of relief to the Farmers policyholders, I think it was a great result then, and I think it's even a better result now.

Q. (BY MR. GODBEY) Commissioner, regarding the disposition of unclaimed funds under the settlement agreement, do you think that it would be fair to class members to put those unclaimed funds back into the Farmers Exchanges?

A. No. Let me, if I may -- and I think it may come up at a later date. But I recently entered into a settlement agreement with State Farm, and there was a provision in that agreement that any unclaimed proceeds

from that settlement were paid to the unclaimed property fund. Let me explain why. The position of the Department of Insurance is when a premium is overcharged to a policyholder, then the company that collects that excessive premium must return that to the policyholders. And if the policyholders for whatever reason don't collect it, it should go to the unclaimed property fund --

THE REPORTER: I'm sorry. Don't collect it?

THE WITNESS: Don't collect -- if the policyholders --

THE COURT: For whatever reason don't collect it is what he said.

THE WITNESS: Yes. Thank you. For whatever reason don't collect that, then it's placed in the unclaimed property fund to be held in perpetuity for those policyholders. That has been the position of the Department of Insurance in the past. That was the position in that settlement. And until last year it had been the position of the attorney general in all class action settlements that the money should go into the Unclaimed Property Act.

And so I think that it's the fairest thing to do here, because, frankly, if you just return it to

surplus, it's not going to do anything. It's just going to sit there. And so to sort of do what the Court did in the *Highland Homes* case and basically have this Court decide to extinguish the rights of those policyholders I think is the wrong approach.

Now, *Highland Homes* did say that the class action counsel has the authority to extinguish the rights of absent class members, and therefore, the attorney general has the authority to do that here, extinguish their rights and give the money somewhere else, but I would disagree with that.

THE COURT: The court reporter's been going -- we all have -- close to an hour and a half now. If you need to ask another question or two to close a topic that's okay, but we're going to need to break soon. Is this a good break time or do you need to cover anything else?

MR. GODBEY: Your Honor, I estimate I probably only have five minutes left with Commissioner Mattax. I would be happy to break now if that works best for everyone, but if you'd rather that I break when I pass --

THE COURT: I don't want you to feel rushed. Five minutes comes and goes pretty quickly.

THE WITNESS: I would just -- let's all

A.   Correct.

Q.   And the checks that come back, those are the checks that are in play whether they stay with the Exchanges or do they go to the unclaimed property section of the comptroller's office?

A.   Or go to a charity.

Q.   Or to a charity.  And y'all have chosen, at least throughout this settlement, that it goes to the comptroller's office.

A.   It goes to the unclaimed property fund because we think that historically has been the best way to get the money back to the rightful owner.  We do not agree that sending it back to the defendant is a good idea, nor do we think -- although the *Highland Homes* court did say it was okay for class counsel to give it -- to extinguish those rights and give it to a charity, we think it better not to extinguish these people's rights to their money and enable them to get it later through the programs the comptroller has to find these folks on their website.  That's the appropriate way to do it.

          If you have $500 in a bank account you forgot about, the bank doesn't get to keep it to make money on it.  The bank turns that over to the unclaimed property fund so that you may have access to get it later.  So to me, as commissioner of insurance, it's

more appropriate to use the structure that the State has set up for people to get their money than to extinguish their rights, and I think that can be done under *Highland Homes*.

Q. But the money has never left the Exchanges, has it? They're not getting it back. It's never left if you leave it there. Am I right?

A. I hope it leaves, because I hope the policyholders get paid someday.

Q. Well, what I'm saying, though, is the money hasn't left if the checks haven't been cashed?

A. The money then would be -- if after three years the checks remain uncashed, then the money is turned over to the comptroller, so the comptroller then has it as unclaimed property. And pursuant to all the rules of unclaimed property, they retain that in perpetuity for the rightful owners of the property.

And I think what we disagree on is who is the rightful owner of this property. And the rightful owner of the property is the people who paid too much in premiums, not future policyholders of Farmers, not a charity. It's the owners of the property. And the unclaimed property fund is the vehicle the State uses to hold forever their rights. I am not in favor of extinguishing their rights, which is what you're asking

to get new lawyers, I'd already have a deal for those lawyers to look at, so I would have streamlined this process. That's the point of it.

Q. So your assumption was that the disqualification of the lawyers would not change the dynamics of the settlement that you were wed to?

A. That's true. I don't think it would have.

Q. Thank you.

THE COURT: Is this a good break time? All right. We'll go ahead and break now. Let me tally up your time so you'll know how much you've used.

You may step down if you wish.

The intervenors have used two hours and 49 minutes. The State and Farmers collectively have used an hour and 12 minutes. I'll see you back in about 15 minutes, maybe 20. It depends on how much I'm going to find in my office on other matters that I need to juggle.

*(Recess taken)*

THE COURT: You may resume.

Q. (BY MR. LONGLEY) Mr. Mattax, I thought I heard State's counsel say in opening that the *Highland Home* -- you're familiar with *Highland Homes*, are you not?

A. I read it a couple days ago.

Q. Okay. I thought I saw your name on some of the

briefs in that. Were you actually on the briefs?

A. I could have been, because either I would have been the division chief at the time of the briefing or the deputy attorney general for litigation, but I didn't read any of the underlying briefs.

Q. But the State in that case was against Fulbright & Jaworski as well as Alexander DuBose, correct?

A. They were wrong, but the Supreme Court disagreed.

Q. So that didn't come out in your favor, but I thought I heard your counsel say that the *Highland Homes* case does not apply to this settlement. Did I hear that correctly?

A. That's correct.

Q. And can you tell me why?

A. Yeah. It's rather complicated, but let me -- I did read the case in anticipation of getting that question. So what the Court in *Highland Homes* said was when a class is certified, the class representative makes a claim for whatever is at issue in that case. And therefore, when the class counsel makes -- or the class representative makes the claim, there is no unclaimed property. Hence, if the class counsel wants to release or extinguish the rights of class members who

didn't get their money, he had the right to do that. And in that case, the decision was made that any checks that weren't cashed would go to, I guess, The Wildlife Conservancy or something like that.

THE COURT: The Nature Conservancy.

THE WITNESS: Nature. Thank you. Thank you, Your Honor. The Nature Conservancy.

So what that means to me is this, is that when you are a class action counsel, you no longer have to follow a case. But frankly, my division tried in 1995 the *Snell* case which said that the Unclaimed Property Act prevented class counsel from extinguishing the rights of class members. The Supreme Court has now said they can extinguish the class rights if they want to. In this settlement class counsel has chosen not to extinguish the rights of the policyholders.

So what does that mean? What that means is a check will be sent to all the policyholders as has been discussed, and if that check remains uncashed, then there is no provision for those rights to be terminated. That payment will always -- that policyholder will always be able to claim that payment from the claims administrator.

So what you have there is a situation, which I think Mr. Godbey was alluding to -- you now have

a situation where the agreement has the claims administrator/Farmers holding that check in perpetuity for the rightful owner. Much as if I had $200 in a bank, the fact that I haven't done anything with that bank doesn't mean they can spend it. They still have to hold it for me in perpetuity. And what the State has done through the Unclaimed Property Act is allow situations like that where banks are holding unclaimed property to give it to the unclaimed property fund, and then they would hold it in perpetuity.

So that's the distinction that I believe class counsel is making in this case, and I believe that is consistent with what's going on in the *Highland Homes,* because the decision to extinguish the rights or not extinguish the rights rests with class counsel. And if that decision isn't made, then after three years the money would go into the unclaimed property fund. That's the way I interpret it.

Q. (BY MR. LONGLEY) Okay. And so on any check that's not cashed, that money is still not gone. It's still being held by the administrator; is that what you said?

A. The admin -- well, I think the money is being held by the -- by Farmers.

Q. Right.

**REPORTER'S CERTIFICATE**

THE STATE OF TEXAS   )

COUNTY OF TRAVIS     )

I, Chavela V. Crain, Official Court Reporter in and for the 53rd District Court of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered in evidence by the respective parties.

WITNESS MY OFFICIAL HAND this the 13th day of July, 2015.

/s/ Chavela V. Crain
Chavela V. Crain
Texas CSR 3064, RMR, CRR
Expiration Date:  12/31/2015
Official Court Reporter
53rd District Court
Travis County, Texas
P.O. Box 1748
Austin, Texas 78767
(512) 854-9322
*

# Exhibit 3

**TO APPELLEES' REPLY IN FURTHER SUPPORT OF
JOINT MOTIONS TO DISMISS APPELLANTS GRIGSON'S AND THE
HOOKSES' APPEALS FOR LACK OF APPELLATE JURISDICTION**

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. D-1-GV-02-002501

STATE OF TEXAS, THE TEXAS  ) IN THE DISTRICT COURT
DEPARTMENT OF INSURANCE,    )
AND THE TEXAS               )
COMMISSIONER OF             )
INSURANCE,                  )
          Plaintiffs,       )
                            )
VS.                         )
                            )
                            )
FARMERS GROUP, INC.,        )
FARMERS UNDERWRITERS        ) TRAVIS COUNTY, TEXAS
ASSOCIATION, FIRE           )
UNDERWRITERS ASSOCIATION,   )
FARMERS INSURANCE           )
EXCHANGE, FIRE INSURANCE    )
EXCHANGE, TEXAS FARMERS     )
INSURANCE COMPANY,          )
MID-CENTURY INSURANCE       )
COMPANY OF TEXAS, AND       )
FARMERS TEXAS COUNTY        )
MUTUAL INSURANCE COMPANY,   )
          Defendants.       ) 261ST JUDICIAL DISTRICT

-----------------------------------------------------

HEARING ON JOINT MOTION FOR
PRELIMINARY APPROVAL OF
THE SECOND AMENDED SETTLEMENT AGREEMENT
AND STIPULATION OF CLASS NOTICE

-----------------------------------------------------

On the 29th day of April, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Scott H. Jenkins, Judge presiding, held in Austin, Travis County, Texas;

Proceedings reported by machine shorthand.

**A P P E A R A N C E S**

FOR THE PLAINTIFFS, THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, AND THE TEXAS COMMISSIONER OF INSURANCE:

 DAVID C. MATTAX
 SBOT NO. 13201600
 Deputy Attorney General for Defense Litigation
 JOSHUA GODBEY
 SBOT NO. 24049996
 Assistant Attorney General
 JAMES R. WENZEL
 SBOT NO. 21179370
 Assistant Attorney General, Consumer Protection
 OFFICE OF THE ATTORNEY GENERAL
 P.O. Box 12548
 Austin, Texas  78711-2548
 (512) 463-0150


FOR DEFENDANTS FIRE UNDERWRITERS ASSOCIATION, FARMERS GROUP, INC., FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, TEXAS FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, MID-CENTURY INSURANCE COMPANY, FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, AND TRUCK UNDERWRITERS ASSOCIATION:

 RICHARD N. CARRELL
 SBOT NO. 03871000
 LAYNE KRUSE
 SBOT NO. 11742550
 FULBRIGHT & JAWORSKI
 1301 McKinney, Suite 5100
 Houston, Texas  77010-3095
 (713) 651-5151

 M. SCOTT INCERTO
 SBOT NO. 10388950
 FULBRIGHT & JAWORSKI
 98 San Jacinto Boulevard, Suite 1100
 Austin, Texas  78701
 (512) 474-5201

**A P P E A R A N C E S**
**(CONTINUED)**

MARCY HOGAN GREER
SBOT NO. 08417650
ALEXANDER, DUBOSE, JEFFERSON & TOWNSEND
515 Congress Avenue, Suite 2350
Austin, Texas  78701
(512) 482-9300


FOR INTERVENORS GERALD HOOKS AND LESLY HOOKS:


JOSEPH BLANKS
SBOT NO. 02456770
LAW OFFICE OF JOSEPH C. BLANKS
P.O. Box 999
Doucette, Texas  75942
(409) 837-9707


FOR INTERVENORS RODOLFO AND ANNA VELA:

RODOLFO VELA, SR., PRO SE
1001 Coffeyville Trail
Grand Prairie, Texas  75052
(972) 639-2487


FOR INTERVENOR MICHAEL J. WOODS:

MICHAEL J. WOODS, PRO SE
8620 N. New Braunfels #522
San Antonio, Texas  78217
(210) 822-1560

**A P P E A R A N C E S**
**(CONTINUED)**


FOR INTERVENOR CHARLES O. "CHUCK" GRIGSON:

     JOE K. LONGLEY
     SBOT NO. 12542000
     LAW OFFICE OF JOE K. LONGLEY
     1609 Shoal Creek Boulevard, Suite 100
     Austin, Texas  78701
     (512) 477-4444

     PHILIP K. MAXWELL
     SBOT NO. 13254000
     LAW OFFICE OF PHILIP K. MAXWELL
     1609 Shoal Creek Boulevard, Suite 100
     Austin, Texas  78701
     (512) 947-5434

**I N D E X**

**VOLUME 1**

**HEARING ON JOINT MOTION FOR**

**PRELIMINARY APPROVAL OF**

**THE SECOND AMENDED SETTLEMENT AGREEMENT**

**AND STIPULATION OF CLASS NOTICE APRIL 29, 2014**

|  | Page | Vol. |
|---|---|---|
| Announcements.......................... | 7 | 1 |
| Argument by Mr. Mattax................. | 21 | 1 |
| Argument by Mr. Carrell............... | 66 | 1 |
| Argument by Mr. Blanks................ | 95 | 1 |

**INTERVENOR HOOKS WITNESSES**

|  | Direct | Cross | Vol. |
|---|---|---|---|
| DAN ROSENTHAL |  |  |  |
| By Mr. Blanks | 107 |  | 1 |
| By Ms. Greer |  | 120 | 1 |

|  | Page | Vol. |
|---|---|---|
| Adjournment.............................. | 142 | 1 |
| Court Reporter's Certificate............. | 143 | 1 |

MR. BLANKS: Right.

THE COURT: But in terms of composing the class, people who bought HOA policies and who allegedly were overcharged for that are the rate class, right?

MR. BLANKS: Well --

THE COURT: We know what the discount class is. We know what the credit class is. And why would we -- other than carving out *Geter*, why would we go back and have to litigate that all over again because those people are still those people who were affected by that?

MR. BLANKS: Well, Mr. Mattax said that the settlement hadn't been modified, the class hadn't been modified, but I say the class has modified itself. In 11 years, probably 10 percent or so of those people have died. Another 7, 8, 9, 10, 12 percent have divorced.

THE COURT: Well, the people you say who fall within the retrospective rate -- let's talk about the first class, the rate class. That's simple; can you agree? So you're saying in the retrospective rate compensation group, something you already heard me concerned about there being no interest -- I'm not so concerned about no interest for the first couple years when everybody would have thought we might have finished

this, but no interest for a decade is concerning me, as you know. But we want to finish this settlement -- or they want to finish this settlement and compensate those people. And you're saying, well, some of them have died. Well, then it would go to their estate. Some of them are divorced. Well, it would be part of the marital estate. Hopefully it was accounted for, but maybe not. Maybe they didn't even know it was in their marital estate because they didn't know about the class. So that's going to be very interesting.

I can't imagine -- I can't -- in my 14 years, I don't think I've dealt with that where we didn't know that was in the estate. But, I mean, those things can be accounted for. It's still, though, the people who were the HOA people. So I'm not understanding you is what I'm saying. That's still that same group of people. Whether they died or divorced or remarried or whatever, it's still the same group of people.

MR. BLANKS: Well, in the abstract, the definition is still the same definition --

THE COURT: Yes.

MR. BLANKS: -- and you define the same class, but I'm just saying the makeup of the class has drastically changed. I don't know how the advocates

deal with it. I assume that they can, but it's definitely a different class. And how you define the class today perhaps should be changed too.

THE COURT: Well, how -- I will need a written definition from you assuming that -- and you have to understand that I -- I was satisfied that they met the class requirements that the attorney general is required to meet. There was some argument about whether adequacy of representation is one. I thought it was because it was an argument of collusion that they couldn't adequately represent. But we did all of that. We did all of the standards for class certification. I don't want to redo them.

MR. BLANKS: I appreciate that.

THE COURT: So what I need from you is evidence that shows me that I have to revise in some way this class, which I've already decided is worthy of being a class, and I'm not going to go backwards on that, and carving out *Geter*, which I know you embrace, and some other tweaking of the settlement before I can embrace its possible fairness, and you already heard those rhetorical questions. So I will need from you evidence about how it is I'm supposed to change the settlement, like with interest, what that interest should be, or what to do about people who died. I don't

**REPORTER'S CERTIFICATE**

THE STATE OF TEXAS  )

COUNTY OF TRAVIS    )

I, Chavela V. Crain, Official Court Reporter in and for the 53rd District Court of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered in evidence by the respective parties.

WITNESS MY OFFICIAL HAND this the 12th day of May, 2014.

*/s/ Chavela V. Crain*
Chavela V. Crain
Texas CSR 3064, RMR, CRR
Expiration Date:  12/31/2015
Official Court Reporter
53rd District Court
Travis County, Texas
P.O. Box 1748
Austin, Texas 78767
(512) 854-9322